[923 NYS2d 2]

Kᴇɴᴅᴀʟʟ Hᴀʀʀɪs, Appellant, v Cɪᴛʏ ᴏғ Nᴇᴡ Yᴏʀᴋ, Respondent.

First Department, April 5, 2011

APPEARANCES OF COUNSEL

*Sacks and Sacks, LLP*, New York City (*Scott Singer* of counsel), for appellant.

*Wade Clark Mulcahy*, New York City (*Nicole Y. Brown* and *John Mulcahy* of counsel), for respondent.

## OPINION OF THE COURT

CATTERSON, J.

In this personal injury action, the plaintiff's Labor Law claims arise out of an accident that occurred while the plaintiff was employed as an ironworker on the Macombs Dam Bridge which spans the Harlem River between Manhattan and the Bronx. The bridge is owned by the defendant, City of New York.

The project on which the plaintiff was employed entailed the removal of the bridge's deck, a steel grid filled with concrete. The deck was first divided into sections by workers using saws. Then the sections were removed by attaching each segment to cables and chokers which in turn were attached to the hook of a crane that hoisted each section vertically, and then away from the bridge.

The facts relating to the plaintiff's accident are undisputed. By affidavit, the plaintiff's foreman stated that, on the day of the accident workers were attempting to lift from the bridge road deck a 10-foot-by-20-foot slab which weighed approximately one ton. As the crane raised the slab from the surface, the foreman saw that one corner of the slab lifted three or four feet in the air while the opposite corner remained attached to the roadbed. In order to separate the slab entirely from the surface, the foreman directed that the slab be lifted until the cables were taut, then told the plaintiff to wedge a piece of four-by-four lumber into the spot where the slab remained attached to the roadbed. Then, the crane was to slowly lower the slab to place pressure on the four-by-four wedge in order to pry loose the attached portion of the slab. After several unsuccessful attempts, the plaintiff took a piece of four-by-four lumber that was approximately six-to-eight-feet long and wedged one end of it into the place where the slab remained attached. He then stood on the other end to keep it in place. The four-by-four was at an angle, with the low end wedged between the slab and the roadbed, and the high end (upon which the plaintiff stood) three to four feet off the ground. The plaintiff then motioned to the signalman asking him to direct the crane operator to slowly lower the slab. Instead, the slab descended quickly, causing the

four-by-four upon which the plaintiff was perched to shatter. The plaintiff was thrown to the ground, whereupon he struck a barrier. In a second affidavit, the foreman acknowledged that he had directed the plaintiff to stand on the end of the four-by-four. The plaintiff's deposition testimony is entirely consistent with the foreman's affidavits.

By summons and complaint dated September 22, 2003, the plaintiff sought damages for, inter alia, the defendant's violation of Labor Law § 240 (1) and § 241 (6). The plaintiff alleged that he was injured when defendant failed to ensure that hoisting operations were performed in a safe and orderly manner, failed to prevent the sudden acceleration or deceleration of loads, as well as failed to transmit proper signals from the signalman to the crane operator.

By notice of motion dated December 19, 2008, the defendant sought summary judgment dismissing the complaint in its entirety. The defendant argued that the plaintiff's Labor Law § 240 (1) claim should be dismissed because the alleged accident did not involve an elevation-related risk, and because the plaintiff was the sole proximate cause of his own injuries. The defendant further argued as to the section 241 (6) claim that the plaintiff had failed to cite to specific and applicable Industrial Code sections, requiring dismissal.

By order dated June 26, 2009, the motion court granted the defendant's request for summary judgment dismissing the complaint on the grounds that "the alleged injury was not a result from a difference in the elevation level of the required work and that this was an ordinary peril of a crane lifting operation which does not implicate Labor Law § 240 (1)." The court further dismissed the plaintiff's Labor Law § 241 (6) claims because he failed to plead specific sections of the Industrial Code.

On appeal, the plaintiff asserts that Labor Law § 240 (1) is implicated in situations where workers fall or where they are injured as a result of falling objects, and further that the evidence in his case demonstrates liability under both categories. For the reasons set forth below, we agree that liability in this case arises at a minimum under the principles applicable to falling-object situations, and find that the motion court erred in denying plaintiff's motion for summary judgment on his Labor Law claims.

Labor Law § 240 (1) provides that

"[a]ll contractors and owners and their agents . . .
in the erection, demolition, repairing, altering . . .

> of a building or structure shall furnish or erect, or
> cause to be furnished or erected for the perform-
> ance of such labor, scaffolding, hoists, stays, ladders,
> slings, hangers, blocks, pulleys, braces, irons, ropes,
> and other devices which shall be so constructed, ·
> placed and operated as to give proper protection to
> a person so employed."

To establish liability under Labor Law § 240 (1), a plaintiff
must demonstrate both that the statute was violated and that
the violation was a proximate cause of injury; the mere occur-
rence of an accident does not establish a statutory violation.
(*See Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d
280 [2003].)

Once again, we are called upon to reiterate that section 240
(1) must be "construed as liberally as may be for the accomplish-
ment of the purpose for which it was . . . framed." (*Ross v
Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 500 [1993]
[internal quotation marks and citations omitted].) In *Ross*, the
Court of Appeals instructed that Labor Law § 240 (1) applies to
both "falling worker" and "falling object" cases. The Court
held that

> "Labor Law § 240 (1) . . . evinces a clear legislative
> intent to provide 'exceptional protection' for work-
> ers against the 'special hazards' that arise when the
> work site either is itself elevated or is positioned
> below the level where 'materials or load [are]
> hoisted or secured.' " (*Ross*, 81 NY2d at 500-501,
> quoting *Rocovich v Consolidated Edison Co.*, 78
> NY2d 509, 514 [1991]; *see also Narducci v Manhas-
> set Bay Assoc.*, 96 NY2d 259 [2001].)

More recently the Court held that courts have historically
read Labor Law § 240 (1) too narrowly. The Court observed that
"[t]he breadth of the statute's protection has . . . been
construed to be less wide than its text would indicate." (*Runner
v New York Stock Exch., Inc.*, 13 NY3d 599, 603 [2009].) In
*Runner*, the Court specifically found that liability under the
statute is not limited to instances in which the worker is actu-
ally struck by a falling object but, "[t]he relevant inquiry . . . is
rather whether the harm flows directly from the application of
the force of gravity to the object." (*Runner*, 13 NY3d at 604.)

*Runner* involved circumstances that are markedly similar to
those of the instant case. In that case, the plaintiff and two
coworkers attempted to move an 800-pound reel of wire down a

flight of just four stairs by tying one end of a length of rope to the reel, looping the rope around a metal bar placed horizontally across a door jamb, and then holding the rope in their hands (essentially acting as counterweights) while two other coworkers pushed the reel down the stairs. As the reel descended, it pulled the plaintiff into the metal bar, injuring his hands. (*Id.*) The Court observed that there was no indication that the makeshift pulley being used at the time of injury malfunctioned; it simply was not adequate to allow the reel's descent to be properly regulated. (*Runner*, 13 NY3d at 602.)

The Court concluded that the specific task being performed at the time of the plaintiff's injury was moving a heavy reel from a higher to a lower elevation, that the danger to be guarded against arose from the reel's insufficiently checked descent, and that the plaintiff's injury flowed directly from the effect of gravity on the reel as it descended. (*Runner*, 13 NY3d at 603-604.) The Court found section 240 (1) liability, stating that "a device precisely of the sort enumerated by the statute was not 'placed and operated as to give proper protection' to plaintiff." (13 NY3d at 603.)

Although *Runner* was decided after the motion court's ruling in the instant case, the Court made it clear that it was not establishing any new principles, merely expounding on the governing principle enunciated almost 20 years previously. (*Runner*, 13 NY3d at 604, citing *Ross*, 81 NY2d at 501.) In *Ross*, the Court held unequivocally that "Labor Law § 240 (1) was designed to prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield the injured worker *from harm directly flowing from the application of the force of gravity to an object or person.*" (81 NY2d at 501.)

In the instant case, the task being performed involved removing a one-ton slab of concrete and steel which was partially attached to a roadbed surface, using a piece of wood as a wedge to extricate the slab from the road deck. The portion of slab attached to the crane by steel cables and chokers was lowered from a higher to a lower elevation in order to exert pressure on the wedge and dislodge the attached portion. The uncontroverted evidence shows that the slab descended too quickly, causing the wedge upon which plaintiff stood to shatter, and in turn causing plaintiff to fall and sustain injury.

As in *Runner*, "the danger to be guarded against plainly arose from the force of the very heavy [slab's] unchecked, or

insufficiently checked, descent," and the plaintiff's injury flowed directly from the effect of gravity on the slab as it descended. (13 NY3d at 603.) Hence, as in *Runner*, it may be observed here that the injury suffered by the plaintiff "was every bit as direct a consequence of the descent of the [slab] as would have been an injury to a worker positioned in the descending [slab's] path." (13 NY3d at 604; *see also Apel v City of New York*, 73 AD3d 406, 407 [1st Dept 2010].)

Although there is precedent indicating that section 240 (1) liability may not attach where a falling object descends a de minimis distance (*see e.g. Melo v Consolidated Edison Co. of N.Y.*, 92 NY2d 909 [1998]), the *Runner* decision makes clear that the weight of the falling object "and the amount of force it was capable of generating, even over the course of a relatively short descent" must be taken into account. (13 NY3d at 605.) Here, the record does not specify the height from which the slab was abruptly lowered though the facts suggest a distance of three to four feet—the height to which one end of the slab was initially raised. However, the slab weighed more than one ton, and therefore in this case, as in *Runner*, a rapid descent of just three feet was capable of generating a significant amount of force.

The defendant's argument attempting to circumvent the plain meaning of, and the strict liability imposed by, the statute is without merit. Acknowledging that the only acceptable defense to a section 240 (1) claim is that a plaintiff's actions are the sole proximate cause of his injuries, the defendant argues as follows: protection was provided, and was not inadequate because none of the safety devices provided—neither the shackles nor the *chokers*, nor the cables attaching the slab to the crane—broke; hence in the absence of evident malfunction, the plaintiff's injuries must necessarily and solely result from his own actions. The defendant cites no legal authority for this novel default position. Nor do the facts of the case support such a position.

This is not a situation where a plaintiff, on his own initiative, took a foolhardy risk which resulted in injury. (*See e.g. Montgomery v Federal Express Corp.*, 4 NY3d 805 [2005].) To the contrary, the uncontroverted evidence shows that the plaintiff's foreman directed him to stand on top of the piece of wood in order to keep it in place. Hence, as a matter of fact and law the plaintiff cannot be the sole proximate cause of his injuries. (*See Pichardo v Aurora Contrs., Inc.*, 29 AD3d 879 [2d Dept 2006] [plaintiff was not sole proximate cause of his injury

where the evidence showed that at the time of injury, he was acting pursuant to the directions of his supervisor].)

More significantly, a Labor Law § 240 (1) inquiry cannot focus simply on whether the provided safety devices malfunctioned, but must also examine whether the safety devices that were provided "operated [so] as to give *proper* protection." (Labor Law § 240 [1] [emphasis added].) In this case, the defendant's assistant civil engineer assigned to the project testified that safety concerns require heavy loads such as the subject roadway slab to be hoisted and lowered slowly. Thus, the question is whether there were safety devices "placed and operated" to guard the plaintiff against the risk of the slab's unregulated speedy descent. We find here, as did the Court in *Runner*, that there was no safety device to guard against such a risk and further, that the unregulated descent of the slab resulted in the plaintiff's injuries.

■ Although the defendant argues that it exercised no control over its contractor's work on the Macombs Dam Bridge project, it is well established that the duties imposed by section 240 (1) are nondelegable, and, consequently, an owner who breaches them "may be held liable in damages regardless of whether it has actually exercised supervision or control over the work." (*See Ross*, 81 NY2d at 500.)

■ Finally, the evidence demonstrated violations of the additional Industrial Code sections alleged in the plaintiff's proposed amended bill of particulars, namely, 12 NYCRR 23-8.1 (f) (1) (iv) and (2) (i). The plaintiff's belated identification of these sections entails no new factual allegations, raises no new theories of liability, and results in no prejudice to the defendant. Hence, leave to amend the bill of particulars should have been granted. (*See Latchuk v Port Auth. of N.Y. & N.J.*, 71 AD3d 560 [2010].) As the evidence of violations of 12 NYCRR 23-8.1 (f) (1) (iv) and (2) (i) is undisputed, the plaintiff is entitled to summary judgment as to Labor Law § 241 (6) liability. (*See Hayden v 845 UN Ltd. Partnership*, 304 AD2d 499 [2003].)

Accordingly, the order of the Supreme Court, Bronx County (Mary Ann Brigantti-Hughes, J.), entered June 26, 2009, which, to the extent appealed from as limited by the briefs, granted defendant's motion for summary judgment dismissal of the complaint insofar as it alleged violations of Labor Law § 240 (1) and § 241 (6), and denied plaintiff's cross motions seeking leave to amend the bill of particulars and summary judgment on the issue of liability, should be reversed, on the law, without costs,

defendant's motion denied, plaintiff's Labor Law § 240 (1) and § 241 (6) claims reinstated, plaintiff granted leave to amend the bill of particulars and granted summary judgment as to liability on his Labor Law § 240 (1) and § 241 (6) claims, and the matter remanded for the determination of damages.

TOM, J.P., FRIEDMAN, RENWICK and MANZANET-DANIELS, JJ., concur.

Order, Supreme Court, Bronx County, entered June 26, 2009, reversed, on the law, without costs, defendant's motion denied, plaintiff's Labor Law § 240 (1) and § 241 (6) claims reinstated, plaintiff granted leave to amend the bill of particulars and granted summary judgment as to liability on his Labor Law § 240 (1) and § 241 (6) claims, and the matter remanded for the determination of damages.