[922 NE2d 865, 895 NYS2d 279]

VICTOR J. RUNNER, Respondent, v NEW YORK STOCK EXCHANGE, INC., et al., Appellants.

Argued November 17, 2009; decided December 17, 2009

**POINTS OF COUNSEL**

*Shaub, Ahmuty, Citrin & Spratt, LLP,* Lake Success (*Steven J. Ahmuty, Jr.,* and *Christopher Simone* of counsel), and *Lewis Brisbois Bisgaard & Smith LLP* for appellants. Plaintiff's accident did not fall within the ambit of what the Legislature envisioned when enacting Labor Law § 240 (1) as interpreted by the courts. (*Rocovich v Consolidated Edison Co.,* 78 NY2d 509; *De Haen v Rockwood Sprinkler Co.,* 258 NY 350; *Schreiner v Cremosa Cheese Corp.,* 202 AD2d 657; *White v Dorose Holding,* 216 AD2d 290; *Blake v Neighborhood Hous. Servs. of N.Y. City,* 1 NY3d 280; *Ross v Curtis-Palmer Hydro-Elec. Co.,* 81 NY2d 494; *Jastrzebski v North Shore School Dist.,* 223 AD2d 677, 88 NY2d 946; *Narducci v Manhasset Bay Assoc.,* 96 NY2d 259; *Pope v Supreme-K.R.W. Constr. Corp.,* 261 AD2d 523; *Baker v Barron's Educ. Serv. Corp.,* 248 AD2d 655.)

*Sacks and Sacks, LLP,* New York City (*Scott N. Singer* of counsel), for respondent. I. The issues raised on the present appeal were properly formulated in the Second Circuit's certified questions. II. The District Court's conclusion that Labor Law § 240 (1) was violated as a matter of law was consistent with the statutory language and controlling decisions of this Court. (*Koenig v Patrick Constr. Corp.,* 298 NY 313; *Haimes v New York Tel. Co.,* 46 NY2d 132; *Bland v Manocherian,* 66 NY2d 452; *Rocovich v Consolidated Edison Co.,* 78 NY2d 509; *Martinez v City of New York,* 93 NY2d 322; *Karaktin v Gordon Hillside Corp.,* 143 AD2d 637; *Robinson v East Med. Ctr., LP,* 6 NY3d 550; *Cahill v Triborough Bridge & Tunnel Auth.,* 4 NY3d 35; *Blake v Neighborhood Hous. Servs. of N.Y. City,* 1 NY3d 280; *Jastrzebski v North Shore School Dist.,* 223 AD2d 677, 88 NY2d

946.) III. The District Court's determination was consistent with Appellate Division decisions construing Labor Law § 240 (1). (*Ross v Curtis-Palmer Hydro-Elec. Co.,* 81 NY2d 494; *Narducci v Manhasset Bay Assoc.,* 96 NY2d 259; *Berg v Albany Ladder Co., Inc.,* 10 NY3d 902; *Jock v Landmark Healthcare Facilities, LLC,* 62 AD3d 1070; *Mattison v Wilmot,* 228 AD2d 991; *Mills v Tumbleweed Mgt. Co.,* 270 AD2d 121; *Carroll v Metropolitan Life Ins. Co.,* 264 AD2d 336; *Brown v New York City Economic Dev. Corp.,* 234 AD2d 33; *Lopez v Boston Props. Inc.,* 41 AD3d 259; *Rodriguez v Margaret Tietz Ctr. for Nursing Care,* 84 NY2d 841.)

*Fiedelman & McGaw,* Jericho (*Andrew Zajac* and *Dawn C. DeSimone* of counsel), *Rona L. Platt, Brendan T. Fitzpatrick, David B. Hamm* and *Timothy J. Keane* for Defense Association of New York, Inc., amicus curiae. In a scenario where plaintiff did not fall from a height, and no object fell from a height striking him, Labor Law § 240 (1) does not apply; proper interpretation of legislative intent and stare decisis dictates rejection of plaintiff's efforts to expand the scope of Labor Law § 240 (1) to encompass a type of hazard never contemplated for inclusion in the statutory strict liability provided for uniquely height-related hazards. (*Misseritti v Mark IV Constr. Co.,* 86 NY2d 487; *Nieves v Five Boro A.C. & Refrig. Corp.,* 93 NY2d 914; *Rocovich v Consolidated Edison Co.,* 78 NY2d 509; *Ross v Curtis-Palmer Hydro-Elec. Co.,* 81 NY2d 494; *Toefer v Long Is. R.R.,* 4 NY3d 399; *Narducci v Manhasset Bay Assoc.,* 96 NY2d 259; *Martinez v City of New York,* 93 NY2d 322; *Perchinsky v State of New York,* 232 AD2d 34; *Schroeder v Kalenak Painting & Paperhanging, Inc.,* 7 NY3d 797; *Munoz v DJZ Realty, LLC,* 5 NY3d 747.)

## OPINION OF THE COURT

Chief Judge LIPPMAN.

The Second Circuit Court of Appeals, in the course of considering defendants' appeal from a judgment imposing liability upon them pursuant to section 240 (1) of New York's Labor Law, has certified to us two questions respecting the applicability of that statute. We now answer that the statute is applicable under the circumstances here presented.

The trial evidence showed that plaintiff suffered serious and permanent injuries to both of his hands while performing tasks in connection with the installation of an uninterruptible power system on defendant New York Stock Exchange's premises. The manner in which the injuries were sustained is undisputed.

Plaintiff and several coworkers had been directed to move a large reel of wire, weighing some 800 pounds, down a set of about four stairs. To prevent the reel from rolling freely down the flight and causing damage, the workers were instructed to tie one end of a 10-foot length of rope to the reel and then to wrap the rope around a metal bar placed horizontally across a door jamb on the same level as the reel. The loose end of the rope was then held by plaintiff and two coworkers while two other coworkers began to push the reel down the stairs. As the reel descended, it pulled plaintiff and his fellow workers, who were essentially acting as counterweights, toward the metal bar. The expedient of wrapping the rope around the bar proved ineffective to regulate the rate of the reel's descent and plaintiff was drawn horizontally into the bar, injuring his hands as they jammed against it. Experts testified that a pulley or hoist should have been used to move the reel safely down the stairs and that the jerry-rigged device actually employed had not been adequate to that task.

The jury, having been instructed that liability pursuant to Labor Law § 240 (1) could not be assigned unless plaintiff's injuries had been attributable to a gravity-related risk, and having found that no such risk had been implicated, returned a verdict for defendants. A motion by plaintiff to set aside the verdict ensued. In granting the motion and directing judgment for the plaintiff upon his Labor Law § 240 claim, the District Court found, as a matter of law, that the movement of the reel down the stairs presented a gravity-related risk; that an adequate safety device had not been used to manage the risk; and that that failure had been a substantial factor in causing plaintiff's injury.

Defendants appealed, and the Second Circuit, after its initial review of the matter, certified to us these questions:

"I. Where a worker who is serving as a counterweight on a makeshift pulley is dragged into the pulley mechanism after a heavy object on the other side of a pulley rapidly descends a small set of stairs, causing an injury to plaintiff's hand, is the injury (a) an 'elevation related injury,' and (b) directly caused by the effects of gravity, such that section 240 (1) of New York's Labor Law applies?

"II. If an injury stems from neither a falling worker nor a falling object that strikes a plaintiff, does

liability exist under section 240 (1) of New York's Labor Law?" (568 F3d 383, 389 [2009].)

While these inquiries are not inapropos, we think the dispositive inquiry framed by our cases does not depend upon the precise characterization of the device employed or upon whether the injury resulted from a fall, either of the worker or of an object upon the worker. Rather, the single decisive question is whether plaintiff's injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential.

Labor Law § 240 (1) provides in relevant part:

> "All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

It is plain that a device precisely of the sort enumerated by the statute was not "placed and operated as to give proper protection" to plaintiff, a person employed in the alteration of a building and thus within the statute's stated protective ambit. The breadth of the statute's protection has, however, been construed to be less wide than its text would indicate. As is here relevant, it is generally agreed that the purpose of the strict liability statute is to protect construction workers not from routine workplace risks, but from the pronounced risks arising from construction work site elevation differentials, and, accordingly, that there will be no liability under the statute unless the injury producing accident is attributable to the latter sort of risk (*see Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 514 [1991]). The trial court was of the view that plaintiff's accident arose from such a risk: the reel had to be moved from a higher to a lower elevation and the danger to be guarded against plainly arose from the force of the very heavy object's unchecked, or insufficiently checked, descent.

Defendants contend to the contrary that the accident was not sufficiently elevation-related to fall within section 240 (1)'s

scope. The occurrence, they note, did not involve the traversal of an elevation differential either by plaintiff or an object that hit him, and they urge that gravity must operate directly upon either the plaintiff or upon an object falling upon the plaintiff if there is to be Labor Law § 240 (1) liability. In support of this view, defendants point out that in *Ross v Curtis-Palmer Hydro-Elec. Co.* (81 NY2d 494, 501 [1993]) we observed that "the 'special hazards' [covered by section 240 (1)] are limited to such specific gravity-related accidents as falling from a height or being struck by a falling object that was improperly hoisted or inadequately secured (*see, DeHaen v Rockwood Sprinkler Co.*, 258 NY 350)," and that in *Narducci v Manhasset Bay Assoc.* (96 NY2d 259, 267 [2001]), we noted that "Labor Law § 240 (1) applies to both 'falling worker' and 'falling object' cases." But in referring to these familiar scenarios in which section 240 (1) liability may arise, neither decision purports exhaustively to define the statute's protective reach. Rather, the governing rule is to be found in the language from *Ross* following closely upon that just quoted, where we elaborated more generally that "Labor Law § 240 (1) was designed to prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield the injured worker *from harm directly flowing from the application of the force of gravity to an object or person*" (*Ross*, 81 NY2d at 501).

Manifestly, the applicability of the statute in a falling object case such as the one before us does not under this essential formulation depend upon whether the object has hit the worker. The relevant inquiry—one which may be answered in the affirmative even in situations where the object does not fall on the worker—is rather whether the harm flows directly from the application of the force of gravity to the object. Here, as the District Court correctly found, the harm to plaintiff was the direct consequence of the application of the force of gravity to the reel. Indeed, the injury to plaintiff was every bit as direct a consequence of the descent of the reel as would have been an injury to a worker positioned in the descending reel's path. The latter worker would certainly be entitled to recover under section 240 (1) and there appears no sensible basis to deny plaintiff the same legal recourse.

In certifying its questions to us, the Second Circuit observed that "[d]efendants offer a litany of illustrative cases highlighting various limitations on section 240 (1) . . . none of which address the material facts of the instant case" (568 F3d 383, 387

[2009]). And, indeed, we have not, until now, addressed a factual progression which, although not following one of the two scenarios defendants would have us deem exhaustive, nonetheless involves an injury directly attributable to a risk posed by a physically significant elevation differential.

The elevation differential here involved cannot be viewed as de minimis, particularly given the weight of the object and the amount of force it was capable of generating, even over the course of a relatively short descent. And, the causal connection between the object's inadequately regulated descent and plaintiff's injury was, as noted, unmediated—or, demonstrably, at least as unmediated as it would have been had plaintiff been situated paradigmatically at the rope's opposite end. It is in this respect that this case differs from *Toefer v Long Is. R.R.* (4 NY3d 399 [2005]), upon which defendants rely. There, the injury was the result of a concatenation of circumstances resulting in the "inexplicabl[e]" launch of an object—not a falling object—in plaintiff's direction (*id.* at 408); it was not, as here, the direct consequence of a failure to provide statutorily required protection against a risk plainly arising from a workplace elevation differential.

Accordingly, the first certified question, as recast, should be answered in the affirmative and the second certified question left unanswered, as unnecessary.

Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur.

Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.27 of the Rules of Practice of the Court of Appeals (22 NYCRR 500.27), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified questions answered in accordance with the opinion herein.