■ WALTER REAVELY et al., Respondents, v YONKERS RACEWAY PROGRAMS, INC., et al., Appellants. [931 NYS2d 579]—

Plaintiff Walter Reavely, a carpenter, was injured while assisting in the installation of a hang wall at the edge of a building foundation. Plaintiff's primary responsibility was to cut sheets of plywood into the smaller pieces that would be used for the wall. To do this, he used a type of circular saw with which he was highly experienced. He then fastened the plywood strips onto the foundation. At the time of the accident, plaintiff was cutting a piece of the hang wall that had already been fastened onto the foundation. To make the cut, plaintiff had to lean over the portion of the wall he was cutting and approach it from the back side. This was because a shallow gully was between him and the wall and he could not stand in the gully while making the cut. Further, close to the back side of the hang wall was an uncovered, unguarded trench, which plaintiff contends was 10 feet deep at the area closest to the hang wall.

Approximately 10 minutes before plaintiff approached the wall to make the cut, another contractor had finished installing waterproofing on the surface of the foundation where plaintiff would be doing the work. Plaintiff knew that it ordinarily takes at least 20 minutes for the waterproofing, which is a tar-like, viscous material, to dry. However, he was directed to make the cut immediately and did not want to defy his supervisor by waiting until he could be certain that the surface was safe. Plaintiff tested the material, and it appeared dry enough to stand on, so he commenced his work. As he was completing the cut, he attempted to replant his right foot and slipped on the viscous waterproofing. According to plaintiff's affidavit submitted in connection with the subject summary judgment motions,

"When I slipped I lost my balance. My body was pulled forward and I hovered over the uncovered 10 feet [*sic*] trench edge without fall protection. It was 10 feet deep there because that particular section had not been backfilled. I felt that I was about to go over the edge.

"I reacted immediately and instinctively to teetering by trying to stand up. I also desperately tried to counter the momentum pulling me over the edge by arching back. I knew that I was holding a potentially lethal saw which I was about to go over with, or even worse, on.

"Worried about hitting my leg as well and in the process of teetering and desperately trying to prevent myself from going fully over the trench edge, my right hand came off the operating saw and it struck my right hand, thumb and forefinger before it dropped."

Thus, according to plaintiff's uncontested version of events, he did not actually sustain his injury by falling into the trench, but rather by attempting to prevent himself from falling.

Plaintiffs commenced this action against the site owner and the general contractor, alleging violations of Labor Law §§ 200, 240 (1) and § 241 (6). In support of their Labor Law § 241 (6) claim, plaintiffs alleged, inter alia, that defendants violated Industrial Code (12 NYCRR) § 23-1.7 (b) (requiring that every hazardous opening be covered or have a safety railing) and § 23-1.7 (d) (prohibiting the existence of slippery conditions at work sites). Defendants moved for summary judgment dismissing the entire complaint. They argued that plaintiffs' Labor Law § 240 (1) claim should be dismissed because plaintiff did not fall from a height, and no object fell upon him from above. As for the claims pursuant to section 241 (6), defendants asserted that the cited Industrial Code provisions were inapplicable. Finally, defendants maintained that the Labor Law § 200 claim must be

dismissed because they did not exercise supervisory control over plaintiff's work. Plaintiffs cross-moved for partial summary judgment on the Labor Law § 240 (1) cause of action, arguing that the absence of protection from a fall into the open trench was an elevation-related hazard that proximately caused plaintiff's injury. They did not oppose that part of defendants' motion seeking dismissal of the Labor Law § 200 claim.

The motion court granted plaintiffs summary judgment as to liability on the Labor Law § 240 (1) claim. It concluded that plaintiffs had made a prima facie showing that plaintiff's injuries flowed directly from the absence of a cover on the trench or other safety device to prevent him from falling into the trench. The court noted that plaintiff did not need to completely fall from one elevation level to another to recover under the statute. However, the court dismissed the portion of the Labor Law § 241 (6) based upon Industrial Code § 23-1.7 (d), holding that the tar was necessary for proper installation of the waterproofing. To the extent the claim was based on defendants' alleged violation of Industrial Code § 23-1.7 (b), the court denied summary judgment, finding that plaintiff had demonstrated that the absence of a cover or other safety device to prevent plaintiff's fall into the trench was a proximate cause of his injuries.

In *Runner v New York Stock Exch., Inc.* (13 NY3d 599, 604 [2009]), the Court of Appeals confirmed that the touchstone of any case under Labor Law § 240 (1) is "whether the harm flows directly from the application of the force of gravity." Consistent with that concept, a long line of cases makes clear that a worker may recover pursuant to Labor Law § 240 (1) if he is injured by a gravity-related accident, even if he did not actually fall (*see e.g. Pesca v City of New York*, 298 AD2d 292 [2002]; *Carroll v Metropolitan Life Ins. Co.*, 264 AD2d 336 [1999]; *Dominguez v Lafayette-Boynton Hous. Corp.*, 240 AD2d 310 [1997]). This Court has consistently held that the statute applies where a worker was injured in the process of preventing himself from falling (*see e.g. Pesca*, 298 AD2d at 293; *Suwareh v State of New York*, 24 AD3d 380 [2005]), or preventing himself from being struck by a falling object (*see e.g. Lopez v Boston Props. Inc.*, 41 AD3d 259 [2007]; *Skow v Jones, Lang & Wooton Corp.*, 240 AD2d 194 [1997], *lv denied* 94 NY2d 758 [1999]). Indeed, *Suwareh* (24 AD3d at 380) presents facts strikingly similar to this case. There, the claimant, who was standing on a roof, was hauling a bucket of hot tar up to the roof by pulling a rope. The bucket got stuck on a ledge of the building, and, while attempting to free it, the claimant lost his balance. He leaned back so as

not to fall off the roof, and as he did so, he lost control of the bucket, whose contents spilled onto his feet. This Court held that "the risk of injury was the direct result of the application of gravity to either claimant himself or the materials being hoisted" (24 AD3d at 381).

The Second Department has followed the same reasoning. In *Ienco v RFD Second Ave., LLC* (41 AD3d 537, 538 [2007]), the plaintiff and his partner, while standing on a plank, were directed to remove a beam and pass it to coworkers six feet below them. When the plaintiff moved his end of the beam, it struck him in the arm. This caused him to lose his balance and "almost" fall. He was able to avoid falling by bracing his foot against a piece of metal. In doing so, however, he hit his head against a metal column and injured himself. The court rejected the plaintiff's claim to the extent it alleged that the beam that struck him in the arm was a "falling object" (41 AD3d at 539). However, to the extent the plaintiff alleged that he was a "falling worker," the court found that the defendants did not establish prima facie their entitlement to summary judgment, since " '[i]t is of no consequence that plaintiff allegedly sustained injuries as he prevented himself from falling further' " (*id.*, quoting *Ortiz v Turner Constr. Co.*, 28 AD3d 627, 628 [2006]).

In this case, defendants argue that the effects of gravity did not proximately cause plaintiff's injuries because he would have taken the same course of action and sustained the same injury even if there had been no trench in his immediate vicinity. They attempt to create a distinction between plaintiff's slip on the waterproofing and his sensation of falling. They do this by seizing on plaintiff's statement in his affidavit, and elsewhere, that he "reacted immediately and instinctively" as proof that he was merely attempting to recover from the sensation of slipping on the waterproofing, as opposed to the sensation of falling. However, the record demonstrates that plaintiff's slip on the surface cannot be separated, temporally or otherwise, from the act of his beginning to fall into the open trench.

Indeed, defendants ignore the balance of plaintiff's affidavit, in which he clearly stated that he was injured while responding to the sensation of actually falling into the trench. Plaintiff stated that he "was *pulled forward* and . . . *hovered over* the uncovered 10 feet [*sic*] trench edge" (emphasis added). He "felt that [he] was *about to go over* the edge," and stated that he was "teetering" and that there was "*momentum* pulling [him] over the edge" (emphasis added). Defendants do not contest these facts, which clearly show that plaintiff was not experiencing just the sensation of slipping when he took the course of action

that led to his injury. Rather, it was the absence of a safety device such as a cover on the trench or a safety harness, that caused plaintiff to do what he did and was the proximate cause of his injuries.

The lack of a safety device was a violation of Labor Law § 240 (1), and was the proximate cause of plaintiff's injuries. In concluding otherwise, the dissent is simply wrong. There is no evidence here by which a rational trier of fact could find that the presence of the trench did not play a substantial role in causing plaintiff to react the way he did. Indeed, the dissent can only take the position it does by ignoring the undisputed facts in the record and the well-established case law, discussed above, that permits recovery under the statute where a worker is injured while successfully fighting the force of gravity. Further, because Industrial Code (12 NYCRR) § 23-1.7 (b) requires that every hazardous opening be covered or have a safety railing, we also disagree with the dissent's view that defendants did not violate Labor Law § 241 (6). The lack of such a safety device clearly was the proximate cause of plaintiff's injuries. Concur—Mazzarelli, Acosta and Román, JJ.

Tom, J.P., and DeGrasse, J., dissent in a memorandum by Tom, J.P., as follows: At his examination before trial, plaintiff Walter Reavely testified that he was working at the edge of a foundation concrete slab on which waterproofing material had been laid down using hot tar to adhere the sheets to the concrete. He was assigned the task of cutting and placing plywood boards to create a hang wall at the leading edge of the construction project's foundation. When initially installed, the top edge of the plywood rose about 14 inches above the top of the footing of the concrete slab. Plaintiff then cut each section of plywood from left to right using a Skil circular saw so as to leave the top of the plywood extended about four or five inches above the top of the footing. He stated on two occasions that he was "holding the saw in a squatted position," but when asked directly if he was squatting, replied, "No. It's just like me bent so I'm in a comfortable position." At the end of the cement slab, there was an open trench that was 10- to 12-feet deep. As plaintiff was cutting a section of plywood there, his right foot slipped away from him because the tar had not completely hardened. Plaintiff testified that when he tried to prevent himself from falling into the trench below, the circular saw, while it was still in the wood, cut his right thumb and index finger.

The protection of Labor Law § 240 (1) has been construed to apply only to special hazards "related to the effects of gravity where protective devices are called for either because of a differ-

ence between the elevation level of the required work and a lower level or a difference between the elevation level where the worker is positioned and the higher level of the materials or load being hoisted or secured" (*Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 514 [1991]; *see Runner v New York Stock Exch., Inc.*, 13 NY3d 599 [2009]). Plaintiffs have failed to specify facts from which it can be deduced that plaintiff's injury was either the result of a significant height differential or the proximate result of the effect of gravity (*cf. Suwareh v State of New York*, 24 AD3d 380 [2005] [claimant working at elevated height was injured when he nearly fell while attempting to free a bucket that was being hoisted and hot tar spilled on his foot]; *Lopez v Boston Props. Inc.*, 41 AD3d 259 [2007] [plaintiff injured when his fall was abruptly halted by safety harness]; *Skow v Jones, Lang & Wooton Corp.*, 240 AD2d 194 [1997], *lv denied* 94 NY2d 758 [1999] [worker injured while helping carry 200-pound pump down ship's ladder]).

Here, plaintiff was working on a level concrete slab at the time of the accident. He was injured when a small section of waterproofing slipped out from under him and caused him to lose his footing, and the circular saw he was using cut into his hand. Plaintiff's injury resulted from his loss of balance on a slippery level surface, which is not related to the effect of gravity and would have occurred regardless of whether a trench was nearby. He did not fall into the trench. Therefore, any failure to cover the trench or to equip plaintiff with a harness was not the proximate cause of his injury. The record fails to provide any explanation sufficient to relate the injury sustained to the operation of the force of gravity (*see Runner v New York Stock Exch., Inc.*, 13 NY3d 599 [2009], *supra*). Rather, plaintiff's injury resulted from "the type of peril a construction worker usually encounters on the job site" (*Misseritti v Mark IV Constr. Co.*, 86 NY2d 487, 491 [1995]). The effect of gravity here was at best tangential (*see Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [1993]).

The cases cited by the majority in support of recovery under Labor Law § 240 (1) are either distinguishable or do not state the circumstances under which injury was sustained (*see e.g. Pesca v City of New York*, 298 AD2d 292 [2002]; *Carroll v Metropolitan Life Ins. Co.*, 264 AD2d 336 [1999]). *Dominguez v Lafayette-Boynton Hous. Corp.* (240 AD2d 310 [1997]) is distinguishable in that the force of gravity acted on a motorized scaffold, five stories above the ground, causing it to swing back toward the face of the building and resulting in injury to the plaintiff's wrist. In *Suwareh v State of New York* (24 AD3d 380

[2005]), the claimant was hoisting a bucket of hot tar when it got stuck and the tar spilled onto his feet. The facts in *Suwareh* clearly implicate a gravity-related risk under Labor Law § 240 (1) and are distinguishable from the facts of this case.

Moreover, the injury sustained by plaintiff was not proximately caused by the absence of a safety device such as a hoist, sling, hanger, rope, harness or barrier, or a cover for the trench, so as to state a viable cause of action under Labor Law § 240 (1) (*see Nieves v Five Boro A.C. & Refrig. Corp.*, 93 NY2d 914, 916 [1999] [no section 240 (1) liability where injury results "from a separate hazard wholly unrelated to the risk which brought about the need for the safety device in the first instance"]; *cf. Suwareh*, 24 AD3d at 381 [absence of hoist and proper brace]; *Pesca*, 298 AD2d at 293 [railing]; *Carroll*, 264 AD2d at 336 [unspecified safety device]; *Dominguez*, 240 AD2d at 312 [proper protection compromised by obstruction]; *Skow*, 240 AD2d at 194 ["the ship's ladder proved inadequate"]). Under the circumstances of this case, summary judgment should have been granted in favor of defendants dismissing plaintiffs' Labor Law § 240 (1) claim.

For the same reason, there is no viable cause of action under Labor Law § 241 (6) predicated upon a violation of 12 NYCRR 23-1.7 (b), which requires every hazardous opening to be guarded by a cover or a safety railing. While defendants did not appeal from the part of the order that denied their motion as to that cause of action, upon review of a motion for summary judgment, this Court may search the record and, where appropriate, grant summary judgment even to the nonmoving party and even in the absence of a cross appeal (*Merritt Hill Vineyards v Windy Hgts. Vineyard*, 61 NY2d 106, 110-112 [1984]). Thus, upon a search of the record, I find that there is no showing that the failure to cover the trench or provide planking below the opening, or safety nets, harnesses or guard rails was the proximate cause of plaintiff's injuries, nor has any violation of 12 NYCRR 23-1.7 (b) (1) (iii), which specifically governs work performed close to the edge of an opening, been made out (*cf. Luckern v Lyonsdale Energy Ltd. Partnership*, 281 AD2d 884, 886-887 [2001]).

Accordingly, the order should be reversed and the complaint dismissed. **[Prior Case History: 2010 NY Slip Op 32018(U).]**