OPINION OF THE COURT
David Elliot, J.
Motion by defendant for an order granting it summary judgment dismissing the complaint; and cross motion by plaintiff for an order granting summary judgment in his favor on his Labor Law § 240 (1) claim, and granting him leave to amend his bill of particulars. It is ordered that the motions are determined as follows:
This is an action to recover damages for injuries alleged to have been sustained as a result of a workplace accident, which occurred on April 6, 2010, at premises owned by defendant, *284 when plaintiffs left finger was pinned against a stairwell wall by an elevator sheave.
At his examination before trial, plaintiff testified to the following, in pertinent part: that plaintiff was employed by Rotavele Elevator, Inc. as a mechanic; that, on the day of the subject accident, he was converting/modernizing one of the passenger elevators in defendant’s building; that plaintiff and his coworkers were in the process of transporting new elevator machinery from the ground floor to the elevator machine room, which was located on top of the building; that the machine room is accessed by going up two flights of stairs from the building’s 31st floor; that prior to the accident, plaintiff and his coworkers were hoisting a l,500-to-2,000-pound elevator sheave to move it from the top of the landing of the first flight to the top of the landing of the second flight of stairs; that, in order to physically transport the machinery up the two flights, plaintiff and his coworkers installed angle irons on the ceiling at the top of each flight of stairs and attached a manual chain hoist thereto; that plaintiff also placed planks flat on the stairs so that the pieces of machinery that were being brought up would not get caught on the stair treads; that, after the workers successfully moved the sheave up to the landing between the first and second flights of stairs, plaintiff’s coworker wrapped the hoist’s chain around the sheave and then hooked it to itself; that, as the sheave began to be hoisted, plaintiff was standing to the left of it, on the landing between the first and second flights of stairs, while another worker was standing to its right, and two other workers were at the top of the landing at the second flight of stairs pulling the manual hoist; that plaintiffs hands remained on the sheave to keep it steady as it was being hoisted up; that the sheave had been hoisted up about 24 inches above the landing when it hit the right stairway wall; that, in response, his coworker pushed against it to re-balance it; that it then rolled to the left and bounced off the left stairway wall, at which point plaintiff heard a snap and the sheave came back down to the landing, went “vigorously to the left” and pinned plaintiffs finger to the left wall of the stairway; and that, when plaintiff looked to see if the chain had broken, he noticed that the latch on the manual chain hoist’s hook — known as a mouse — was missing.
With respect to plaintiffs cause of action under Labor Law § 240 (1), that statute requires owners, contractors, and their agents to provide workers with appropriate safety devices to *285 protect against “such specific gravity-related accidents as falling from a height or being struck by a falling object that was improperly hoisted or inadequately secured” (Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 501 [1993]; see Rocovich v Consolidated Edison Co., 78 NY2d 509, 514 [1991]; Gasques v State of New York, 59 AD3d 666 [2009]; Rau v Bagels N Brunch, Inc., 57 AD3d 866 [2008]). The duty to provide scaffolding, ladders, and similar safety devices is nondelegable, as the purpose of the section is to protect workers by placing the ultimate responsibility on the owners and contractors (see Gordon v Eastern Ry. Supply, 82 NY2d 555, 559 [1993]; Ortega v Puccia, 57 AD3d 54 [2008]; Riccio v NHT Owners, LLC, 51 AD3d 897 [2008] ). In order to prevail on a cause of action pursuant to Labor Law § 240 (1), the plaintiff must establish that the statute was violated and that said violation was the proximate cause of his or her injuries (see Chlebowski v Esber, 58 AD3d 662 [2009] ; Rakowicz v Fashion Inst. of Tech., 56 AD3d 747 [2008]; Rudnik v Brogor Realty Corp., 45 AD3d 828 [2007]).
Both plaintiff and defendant move for summary judgment on this issue. Defendant, in support of its motion, contends that— though the work involved the use of a hoist — the task at hand did not involve the performance of work at two different levels, nor did it involve a significant elevation differential between where plaintiff was located and where the load was being hoisted. In fact, defendant states, plaintiff constantly kept both hands on the sheave and, when it slid down the plank, the bottom of it was only approximately two feet from the landing. Finally, defendant contends that the accident was only tangentially related to the force of gravity, since the sheave had already struck the landing before moving “laterally,” pinning plaintiffs finger to the wall.
Plaintiff, on the other hand, avers that section 240 does apply since the inadequacy of the hoist was the proximate cause of the accident. Further, the height differential cannot be considered de minimis given the weight of the equipment being hoisted and the amount of force it was capable of generating. Moreover, plaintiff states that the sheave did not, in fact, move laterally but that gravity caused the sheave to topple over to the left upon hitting the landing.
The Court of Appeals recently held in Wilinski v 334 E. 92nd Hous. Dev. Fund Corp. (18 NY3d 1 [2011]) that a worker is not precluded from recovery under Labor Law § 240 when he or she sustains injury caused by a falling object whose base stands at *286 the same level as the worker (id. at 9). The Court further stated that
“[o]ur jurisprudence defining the category of injuries that warrant the special protection of Labor Law § 240 (1) has evolved over the last two decades, centering around a core premise: that a defendant’s failure to provide workers with adequate protection from reasonably preventable, gravity-related accidents will result in liability” (id. at 7).
In distinguishing Misseritti v Mark IV Constr. Co. (86 NY2d 487 [1995]), which involved a wall whose base was on the same level as the plaintiff collapsing on him, the Wilinski Court clearly stated it would not adopt a “same level” rule; rather, it noted that Misseritti did not find liability because there was no causal nexus between the injury and a lack or failure of a protective device prescribed by the statute (id. at 9).
Earlier, the Court of Appeals decided Runner v New York Stock Exch., Inc. (13 NY3d 599 [2009]). In Runner, the plaintiff was injured when he and his coworkers were moving an 800-pound reel of wire down the stairs (id. at 602). To prevent the reel from rolling freely down, a rope was tied around the reel; one end of the rope was wrapped around a door jamb while plaintiff held the loose end (id.). As the reel descended, it pulled plaintiff horizontally into the bar, injuring him (id.). The Court determined that this injury did involve an elevation differential, given the “weight of the object and the amount of force it was capable of generating, even over the course of a relatively short descent” (id. at 605). Further, the Court noted that there was a causal connection between the injury and the object’s “inadequately regulated descent” (id.).
Given the above, defendant’s contention that the work did not encompass the protections of the statute because there was no “appreciable height differential” between plaintiff and the sheave is without merit. Further, to the extent that defendant relies upon, inter alia, Mancuso v MTA N.Y. City Tr. (80 AD3d 577 [2011]), Whitehead v City of New York (79 AD3d 858 [2010]), and Cruz v Neil Hospitality, LLC (50 AD3d 619 [2008]) for the notion that no elevation differential exists in situations where an object, inter alia, slides along a ramp, the court does not find these cases to be applicable herein. Mancuso involved a worker who was traveling down a ramp while he was operating an aerial lift (80 AD3d at 578). Though the Court did not detail its reason for finding that the accident did not involve an elevation- *287 related risk, it is clear that the accident did not involve a “falling worker” or a “falling object” which was inadequately secured. Here, the accident was a direct result of an object — the elevator sheave — which fell because of the failure of the hoist to adequately protect plaintiff against the risk of it falling. Whitehead involved steel tubes which rolled towards plaintiff; while plaintiff ran away, he slipped on a puddle of water (79 AD3d at 859). That case clearly does not involve the effects of gravity. It would appear that, while Cruz is arguably the most similar to the subject action, there are two important distinctions which make the case inapplicable. The plaintiff in Cruz was pushing a steel beam up a 15-foot-high mound by pushing it on top of another beam (50 AD3d at 620). The beam began to slide back down, and plaintiff was unable to avoid it, and his leg was caught (id.). The Court held that the plaintiff was not subject to the protections of section 240 because the beam was at the same level as plaintiff (id.). However, the Court of Appeals has, since Cruz, articulated that it declines to adopt a “same level” rule. Moreover, unlike plaintiff herein, the plaintiff in Cruz was not involved in hoisting material (see e.g. McAllister v Phoenix Constructors, JV, 33 Misc 3d 1227[A], 2011 NY Slip Op 52128[U] [Sup Ct, NY County 2011]).
To the extent that defendant states that the difference here is that the sheave was never actually hoisted off the ground (in that it remained in constant contact with the plank), that fact is irrelevant (see Runner, 13 NY3d at 602). Further, defendant’s characterization that the pinning of plaintiff’s hand was tangentially and not directly related to the application of the force of gravity is unsupported by the record. The testimony reads as follows:
“A. I heard the snap and it came right back to the landing and tipped it back to the left.
“Q. When you say came back to the landing, did the chain break?
“A. At that moment as soon as it hit the landing, I was already on the wall with it. It already caught my hand and I looked to see if the chain was broke, but the hook where the latch been on wasn’t there.
“Q. Just to back up a second, when you said it fell back down, it basically dropped from the place where it was, came back down the stairs to the landing?
“A. Yes.
*288 “Q. What part of the shiv [sic] made contact with the landing; the square?
“A. The square on the side.
“Q. We’ve been calling it a square but does that part have a name?
“A. This thing didn’t make contact with the floor.
The wheel itself made contact with the floor.
“Q. When the wheel made contact with the floor, at that point, where was your body with respect to where that wheel was?
“A. I was behind it.
“Q. So the wheel came back towards you?
“A. Yes.
“Q. As the wheel came back towards you, did it make contact with any part of your body as it came back down to the landing?
“A. It happened within seconds. It came in contact with the floor and went to the left at the same time. That’s when it caught me.”
The testimony above shows that the sheave did not first come to a rest and then move laterally to crush plaintiffs finger; rather, the sheave fell back down the stairs, making contact with the ground as it also moved to the left, pinning plaintiffs finger to the wall. Given the above, plaintiff has demonstrated that he is entitled to summary judgment on his Labor Law § 240 (1) cause of action.
Turning to Labor Law § 241 (6), same imposes a nondelegable duty on owners and contractors to provide reasonable and adequate protection and safety for workers without regard to direction and control (see Romero v J & S Simcha, Inc., 39 AD3d 838 [2007]). In order to prevail under this section of the Labor Law, a plaintiff must establish that specific safety rules and regulations of the Industrial Code promulgated by the Commissioner of the Department of Labor were violated (see Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494 [1993]; Ares v State of New York, 80 NY2d 959 [1992]). The rule or regulation alleged to have been breached must be a specific, positive command and be applicable to the facts of the case (see Kwang Ho Kim v D & W Shin Realty Corp., 47 AD3d 616, 619 [2008]; Jicheng Liu v Sanford Tower Condominium, Inc., 35 AD3d 378, 379 [2006]).
To the extent that defendant argues, and plaintiff concedes, that the latter’s claim cannot be predicated on a violation of 12 *289 NYCRR 23-1.5, plaintiff’s claim under that section of the Industrial Code is dismissed. Plaintiff, however, seeks to amend his bill of particulars to allege violations of section 23-6.2 (c) and (d) (1). To the extent that defendant opposes the relief on procedural grounds for failure to attach to the cross motion a copy of the proposed amended bill of particulars, plaintiff annexes same to his reply papers and, in any event, this court has the power to grant, sua sponte, leave to amend to include relevant sections of the Industrial Code even absent plaintiff having moved for such relief (see Latino v Nolan & Taylor-Howe Funeral Home, 300 AD2d 631 [2002]).
Nor does the court find that these allegations involve new theories of liability or new factual situations, thereby posing no prejudice to defendant herein (see Kelleir v Supreme Indus. Park, 293 AD2d 513 [2002]; Noetzell v Park Ave. Hall Hous. Dev. Fund Corp., 271 AD2d 231 [2000]). With respect to the violation alleged under subdivision (c), involving, inter alia, the use of damaged hooks, this does not present a new theory of liability, as plaintiff alleged in his bill of particulars that defendant failed to furnish a hook with a safety latch to ensure that the load would not come free;* plaintiff also testified as to this fact at his examination before trial held on August 12, 2011. Moreover, with respect to subdivision (d) (1), involving the improper use of chains as slings in hoisting operations, plaintiff also alleged in his bill of particulars defendant’s failure to furnish slings or other devices in order to give plaintiff proper protection. (It is also noted that plaintiff testified to this fact as well at his deposition.) As such, plaintiff is entitled to amend his bill of particulars to include a violation of these sections of the Industrial Code.
Turning to Labor Law § 200 and common-law negligence, the general rule is that an owner or contractor has the duty to provide construction site workers with a reasonably safe place to work (see Rizzuto v L.A. Wenger Contr. Co., 91 NY2d 343, 352 [1998]; Lombardi v Stout, 80 NY2d 290, 294 [1992]; Radoncic v Independence Garden Owners Corp., 67 AD3d 981 [2009]). If a worker is injured as a result of the manner in which he or she performed the work — rather than from a dangerous or defective *290 condition on the premises — and the owner or contractor has not exercised supervisory control over the operation, liability does not attach (see Radoncic, 67 AD3d at 982; McFadden v Lee, 62 AD3d 966 [2009]; Ortega, 57 AD3d at 61). Here, defendant has— without opposition — established that the subject accident occurred due to the method in which plaintiff performed the work, and that it neither supervised, directed, controlled, nor provided tools for, the subject task. As such, defendant is entitled to summary judgment dismissing these claims.
Accordingly, defendant’s motion is granted only to the extent that plaintiff’s Labor Law § 200 claim, common-law negligence claim, and claim based upon a violation of 12 NYCRR 23-1.5 are dismissed. Plaintiffs cross motion is granted in its entirety.

 Defendant distinguishes between plaintiffs allegation that defendant failed to furnish a hook with a safety latch and that the hook used was damaged or was neither moused nor securely fastened. The court declines to consider this a meaningful distinction; rather, the issue seems to be merely one of semantics.