apartment, and dismissing the proceeding brought pursuant to CPLR article 78, unanimously affirmed, without costs.

The determination that the subject apartment was not petitioner's primary residence for at least two years prior to the death of his mother in November 2010 has a rational basis (*see e.g. Matter of Martino v Southbridge Towers, Inc.*, 68 AD3d 412 [1st Dept 2009]). The record shows petitioner was not named on the income affidavits during the relevant time period and, other than an affidavit from a friend of petitioner's mother, who said that the apartment was petitioner's primary residence, petitioner failed to submit any other documentary evidence showing that the apartment was his primary residence (*see Matter of Renda v New York State Div. of Hous. & Community Renewal*, 22 AD3d 382 [1st Dept 2005]; *see also* 9 RCNY 1727-8.2 [a] [2]; *compare Matter of Murphy v New York State Div. of Hous. & Community Renewal*, 21 NY3d 649 [2013]). Furthermore, "persons seeking succession may only have one primary residence" (9 NYCRR 1727-8.2 [a] [2] [ii]), and here, petitioner does not dispute that he frequently traveled to his home in California to take care of a family business, while also taking care of his mother in New York.

We have considered petitioner's remaining contentions, including that respondent Southbridge Towers should be estopped from contesting him succession, and find them unavailing. Concur—Acosta, J.P., Renwick, Moskowitz, Feinman and Kahn, JJ.

■ Loren McLean et al., Appellants, v Tishman Construction Corporation et al., Respondents. [40 NYS3d 771]—

Order, Supreme Court, New York County (Joan M. Kenney, J.), entered December 18, 2015, which denied plaintiffs' motion for summary judgment on the issue of liability on the Labor Law § 240 (1) claim and granted defendants' motion for summary judgment dismissing the complaint, unanimously modified, on the law, to grant plaintiffs' motion and deny defendants' motion as to the section 240 (1) claim, and otherwise affirmed, without costs.

The injured plaintiff testified that a metal beam, while being placed on a flatbed truck, fell off the blades of a forklift, slamming plaintiff's foot and causing him to fall off the truck. This unrefuted testimony established prima facie that "plaintiff's

injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential" and therefore that liability exists under Labor Law § 240 (1) (*Runner v New York Stock Exch., Inc.*, 13 NY3d 599, 603 [2009]). The cases that defendants rely on are inapposite, since they involve not objects falling on or toward workers on flatbeds but workers falling from flatbeds, implicating only the adequacy of safety devices for falling workers, which is not at issue here (*see Berg v Albany Ladder Co., Inc.*, 10 NY3d 902, 903 [2008]; *Toefer v Long Is. R.R.*, 4 NY3d 399, 408 [2005]; *Brown v New York-Presbyt. HealthCare Sys., Inc.*, 123 AD3d 612 [1st Dept 2014]).

Nor was plaintiff the sole proximate cause of his injuries since the injuries "were caused at least in part by the lack of safety devices to check the beam's descent as well as the manner in which [his coworker] lowered the beam" (*Bonaerge v Leighton House Condominium*, 134 AD3d 648, 649-650 [1st Dept 2015]; *see Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 290 [2003]).

The motion court properly deemed the Labor Law § 241 (6) claims predicated on Industrial Code (12 NYCRR) §§ 23-1.16, 23-2.3, 23-6.1 and 23-8.1 abandoned, since plaintiff failed to specify any particular subsection(s) and subdivision(s) of these provisions (*see Pantelis v Skanska*, 2012 NY Slip Op 33000[U], *16-17 [Sup Ct, NY County 2012]). The remaining provisions on which plaintiff relies, 12 NYCRR 23-1.5 (a) and (c) (1) and (2), are insufficient as predicates for Labor Law § 241 (6) liability, since they set forth general rather than specific standards of conduct (*Gasques v State of New York*, 15 NY3d 869 [2010]; *Maldonado v Townsend Ave. Enters., Ltd. Partnership*, 294 AD2d 207 [1st Dept 2002]; *Williams v White Haven Mem. Park*, 227 AD2d 923 [4th Dept 1996]).

Defendants established prima facie that they did not have the authority and control over the injury-producing work necessary to support the Labor Law § 200 and common-law negligence claims (*see Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 352 [1998]). While defendant Tishman, in its capacity as construction manager, had general supervisory and coordinating responsibilities, it did not have the requisite level of direct supervision and control over the injury-producing activity (*see Geonie v OD & P NY Ltd.*, 50 AD3d 444 [1st Dept 2008]; *Scott v American Museum of Natural History*, 3 AD3d 442, 443 [1st Dept 2004]). Nor is Tishman's authority to control safety at the work site and stop work if it observed a dangerous condition sufficient to support the Labor Law § 200 and common-law

negligence claims as against it (*see Conforti v Bovis Lend Lease LMB, Inc.*, 37 AD3d 235, 236 [1st Dept 2007]).

We have considered plaintiffs' remaining contentions and find them unavailing. Concur—Acosta, J.P., Renwick, Moskowitz, Feinman and Kahn, JJ.

■ AARON ELKIN, Appellant, v ANDREA LABIS, Respondent. [40 NYS3d 772]—

Order, Supreme Court, New York County (Ellen Gesmer, J.), entered August 25, 2014, which granted defendant mother's motion for a permanent injunction against plaintiff father to the extent of prohibiting him from directly contacting the subject child's pediatrician and her medical practice, ordered the father to request medical records or information about the child from the doctor and her practice by contacting the mother in writing, via fax or email, and within two days of receiving such request, directed the mother to forward same to the doctor and her practice requesting that the information be sent directly to the father, and limited such requests to up to six times per calendar year, excluding requests for information concerning emergency hospitalizations of the child, unanimously affirmed, without costs.

To the extent the father remains constrained from directly contacting the child's physician and medical practice, any decision by this Court would have an impact or immediate consequence on the parties' respective rights (*see Matter of Johnson v Pataki*, 91 NY2d 214, 222 [1997]). Accordingly, the appeal is not moot.

In any event, the mother's contention was corroborated by the physician's assertions that the father had called her office "incessantly . . . before visits and after visits" and would constantly be annoying to the front desk, "to the point that [they] were dreading his phone calls." Moreover, the father did not dispute that he made such multiple requests for information, and admitted that he was motivated to obtain the child's medical records to support his pending habeas corpus motion (*see generally Association of Contr. Plumbers of City of N.Y. v Contracting Plumbers Assn. of Brooklyn & Queens, Inc.*, 302 NY 495, 498 [1951]; *Bellew v New York, Westchester & Conn. Traction Co.*, 47 App Div 447 [2d Dept 1900]). Further, the mother established that the child would suffer harm if she were deprived of continuity of treatment by her pediatrician, who had treated her since infancy and with whom she had a