Valle v Port Auth. of N.Y. & N.J. (2020 NY Slip Op 07685)





Valle v Port Auth. of N.Y. & N.J.


2020 NY Slip Op 07685


Decided on December 17, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 17, 2020

Before: Friedman, J.P., Manzanet-Daniels, Kern, Moulton, JJ. 


Index No. 23262/2013 Appeal No. 12091 Case No. 2019-04148 

[*1]Thomas W. Valle, et al., Plaintiffs-Respondents,
v
Port Authority of New York and New Jersey et al., Defendants-Appellants-Respondents, City Lumber Inc., Defendant-Respondent-Appellant.
Port Authority of New York and New Jersey et al., Third-Party Plaintiffs-Appellants-Respondents,
v
City Lumber Inc., Third-Party Defendant-Respondent-Appellant.


Shaub, Ahmuty, Citrin & Spratt LLP, New York (Jonathan P. Shaub of counsel), for appellants-respondents.
Ahmuty, Demers & McManus, Albertson (Glenn A. Kaminska of counsel), for respondent-appellant.
Sacks and Sacks, LLP, New York (Scott N. Singer of counsel), for respondents.



Order, Supreme Court, Bronx County (Donald A. Miles, J.), entered September 25, 2019, which, to the extent appealed from as limited by the briefs, denied defendants Port Authority of New York and New Jersey and Turner Construction Corp.'s motion for summary judgment dismissing the Labor Law § 200 claim as against them, granted plaintiffs' cross motion for summary judgment as to liability on the Labor Law § 240(1) claim as against the Port Authority and Turner, and denied defendant/third-party defendant City Lumber Inc.'s motion for summary judgment dismissing the common-law negligence claim as against it and the third-party claims for contractual indemnification, common-law indemnification, and contribution, modified, on the law, to deny plaintiffs' motion, and to grant City Lumber's motion as to the third-party claim for contractual indemnification, and otherwise affirmed, without costs.
Neither plaintiffs nor defendants are entitled to summary judgment as to liability on the Labor Law § 240(1) claim.
Port Authority and Turner failed to demonstrate conclusively that plaintiff Thomas Valle was the sole proximate cause of the accident in which a stack of cement boards fell off a City Lumber truck and onto him after the wooden skids underneath the boards broke. Defendants are correct that plaintiff's status as general foreman of the nonparty carpentry subcontractor gave him decision-making authority beyond that reposed in the average workman. In his capacity as foreman, inter alia, plaintiff provided instructions concerning the manner in which the boards were to be stacked in the truck, examined the route to the subbasement area on the day before the accident, inspected the load when it arrived at the worksite, ordered his workers to unload the truck after the load became unbalanced, and directed his workers to use a pallet jack to unload the cement boards in the damaged part of the load instead of continuing to unload them by hand using A-frame dollies.
However, it is for the jury to consider the numerous events giving rise to plaintiff's accident, some disputed, and decide which was a proximate cause of the plaintiff's accident. Among the other potential causes of the accident were the Port Authority and Turner's alleged refusal to allow a street level hoist, rather than trucks, to be used for deliveries to the subbasement levels, City Lumber's alleged improper loading of the delivery truck, the City Lumber truck driver's alleged excessive speed as he drove the truck down the ramp, and whether workplace timing exigencies forced plaintiff's hand in directing the unloading of the unsettled concrete boards. Whether any or all of these events and decisions were proximate causes of plaintiff's accident, or merely furnished the occasion for the accident, is for the finder of fact to determine, given the unique nature of the inquiry in this case (see Giordano v Tishman Constr. Corp., 152 AD3d 470 [1st Dept 2017]; see also Valente v Lend Lease (US[*2]) Constr. LMB, Inc., 29 NY3d 1104 [2017]; see generally Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315 [1980]).
Plaintiff failed to demonstrate conclusively that the accident was proximately caused by Port Authority and Turner's failure to provide him with proper protective devices for the performance of his work. The load of cement boards atop the pallet jack did not fall because of an inadequacy or deficiency in the pallet jack but, rather, because the wooden skids underneath the load of cement boards broke, causing the load to fall from the pallet jack. Coupled with the dispute as to whether plaintiff was permitted to use the street level hoist for the delivery of cement boards, this evidence renders it impossible to determine as a matter of law that Port Authority and Turner failed to supply plaintiff with adequate safety devices for the performance of his work and that this failure was a proximate cause of plaintiff's accident (see Morera v New York City Tr. Auth., 182 AD3d 509 [1st Dept 2020]; see also Nazario v 222 Broadway, LLC, 28 NY3d 1054 [2016]).
Issues of fact also remain as to whether the Port Authority and Turner are liable for plaintiff's accident under Labor Law § 200 either because they directed that deliveries be made directly to the subbasement level instead of being made at street level and then lowered down by hoist (see Rizzuto v L.A. Wenger Contr. Co., 91 NY2d 343, 352-353 [1998]), or because of a dangerous condition of the premises, i.e., the concrete covered pipe that the City Lumber truck ran over in making the delivery (see Addonisio v City of New York, 112 AD3d 554 [1st Dept 2013]) (or both).
The third-party claim against City Lumber for contractual indemnification must be dismissed, as Port Authority and Turner do not contest City Lumber's argument that there is no contract between them. However, given the above-mentioned issues of fact, the third-party claims for common-law indemnification and contribution should not be dismissed at this juncture (see e.g. McCullough v One Bryant Park, 132 AD3d 491, 493 [1st Dept 2015]; Betancur v Lincoln Ctr. for the Performing Arts, Inc., 101 AD3d 429 [1st Dept 2012]; Stallone v Plaza Constr. Corp., 95 AD3d 633, 634 [1st Dept 2012]; see generally McCarthy v Turner Constr., Inc., 17 NY3d 369, 377-378 [2011]).
We are without jurisdiction to consider Port Authority and Turner's arguments as to the Labor Law § 241(6) claim, since their notice of appeal limited the appeal to the grant of plaintiff's motion pursuant to Labor Law 240(1) and the denial of their motion with respect to Labor Law 200 (see Handelsman v Llewellyn,180 AD3d 580, 581 [1st Dept 2020]).
All concur except Manzanet-Daniels, J. who dissents
in part in a memorandum as follows:




MANZANET-DANIELS, J. (dissenting in part)
 

The evidence establishes that plaintiff Thomas Valle was not the sole proximate cause of the subject accident. I would accordingly grant plaintiffs' cross motion for summary judgment as to [*3]liability on the Labor Law § 240(1) claim as against the Port Authority and Turner.
In May 2013, when the accident occurred, Turner was the construction
manager/general contractor for 2 World Trade Center Tower. Plaintiff was employed as general foreman by Donaldson Interiors, a subcontractor hired to perform certain carpentry work at the site, including the installation of the Durock walls. The cement board was supplied by another entity, City Lumber, Inc.
On the morning of the accident, plaintiff and his crew were awaiting a delivery of cement board on Level B4 by a driver for defendant City Lumber. The cement boards needed to be unloaded by 7:00, when work on the site would commence. B4 was not a loading dock and was a low clearance area that made use of a hoist impossible.
The load was composed of two picks containing sixty cement boards each. The picks were prepackaged by the manufacturer on wood pallets and City Lumber supplied the dunnage (as explained by several of the witnesses, dunnage enables a forklift to insert its forks under a load to facilitate off-loading).
The roadway to B4 was steep and circular. Plaintiff, who accompanied the City Lumber driver to B4, testified that after hitting a bump, the load shifted such that one of the picks was hanging off the bed of the truck. Such was noted by both plaintiff and the driver. Given time constraints set by Turner, i.e., the picks needed to be offloaded by seven o'clock, together with the fact, discussed infra, that regulations preclude the operation of a vehicle with an overhanging load in the streets, it was not feasible to reject the load.
Upon arrival at B4 level, plaintiff and his crew worked to offload the picks. The first pick was removed without incident. The second pick, which was the one hanging off the truck, presented more difficulties. Plaintiff and his crew used A frames to remove some of the boards, and plaintiff then inserted dunnage under the remainder to allow use of a pallet jack by one of his crew. Almost immediately after maneuvering the forks of the pallet jack underneath, a pallet board cracked,[FN1] sending the load on top of plaintiff and pinning him to a wall.
Labor Law § 240(1), designed to promote safe practices at construction sites, provides statutory protections for workers engaged in the erection, demolition, alteration and repairing of "buildings and structures." Specifically, it requires that owners, general contractors and their agents, at sites where such work is undertaken, furnish "scaffolds, hoists . . . slings, . . . pulleys, braces, irons, . . . and other devices which shall be so constructed, placed and operated as to give proper protection" to construction workers.
The statute is designed to prevent such "gravity-related accidents as falling from a height or being struck by a falling object that was improperly hoisted or inadequately secured" (see Runner v New York Stock Exch., Inc., 13 NY3d 599, 604 [2009], citing Ross v Curtis-Palmer [*4]Hydro-Elec. Co., 81 NY2d 494 [1993]). Labor Law § 240 is applicable to accidents which arise where a worker is struck by an unsecured object, provided the object is one "that required securing for the purposes of the undertaking" (Outar v City of New York, 5 NY3d 731, 732 [2005]). Where an accident is clearly gravity-related, a violation of Labor Law § 240(1) may be implicated even where the "worker sustains an injury caused by a falling object whose base stands at the same level as the worker" (Wilinski v 334 E. 92nd Hous. Dev. Fund Corp., 18 NY3d 14 [2011]]).
Absolute liability protection for workers engaged in building construction is warranted since such workers "usually have no choice but to work with the equipment at hand, though danger looms large" (Koenig v Patrick Constr. Corp., 298 NY 313, 318-319 [1948]). Comparative negligence may not be asserted as a defense (see Bland v Manocherian, 66 NY2d 452, 468 [1985]), and the sole proximate cause defense is inapplicable where, as here, a plaintiff has not been provided with adequate safety equipment as required by the Labor Law (see DeRose v Bloomingdale's, Inc., 120 AD3d 41, 45 [1st Dept 2014]; see also Grant v Solomon R. Guggenheim Museum, 139 AD3d 583, 584 [1st Dept 2016] [where the plaintiff was never provided with proper safety devices, his use of a J-bar to move a crate into position could not be said to constitute the sole proximate cause of his accident and the plaintiff was therefore entitled to partial summary judgment]).
Inasmuch as defendants have been shown to bear some degree of fault for defendants' accident, plaintiff is entitled to partial summary judgment on the section 240(1) claim. The record establishes that the load of cement board that was being moved off the truck was not properly secured; alternatively, the failure to provide adequate hoisting equipment constituted a violation. In either case, it cannot be said that an issue of fact exists as to whether plaintiff was the sole proximate cause of his accident. As plaintiffs' expert engineer explained:
In this case, the safety equipment provided to hoist the
load was a pallet jack. Because of the broken pallet, the
pallet jack did not properly and securely balance the load
and move it onto the loading dock, causing the hoisted load
to fall. The workers also were not provided with proper
hoisting devices used previously such as a truck-mounted
crane or gantry to safely unload the boards from the
broken pallet and the device provided, a pallet jack, failed.
This was due at least in part to Turner directing that the
unloading only be performed in this area versus the
previous hoist area where a truck with a crane mounted
could have been used.
In the present case, as in DeRose, a proper device — a working hoist and
ancillary equipment — was present at the jobsite, but Turner, the party with
ultimate responsibility for determining how materials would be brought into the site, refused to allow the plaintiff and his crew [*5]to use it and directed that unloading take place in a low clearance area where such a hoist could not be used and the load could not be adequately secured. At his EBT, plaintiff testified:
Q. Was there a specific point in time prior to your
accident when a certain location was designated at which
Donaldson would receive deliveries being made by truck?
A. Shortly prior to the accident, the decision was made
by Turner to deliver in that area.
Q. When you say "in that area," what area are you referring to?
A. The B 4 level, which was not a loading dock.
* * *
Q. Do you recall ever having any conversations
whatsoever with anyone from Turner with regard to the
particular location at which the delivery was to be made
on the date of the accident?
A. I discussed with numerous supers. . . Nobody liked
the fact that they were delivering down there. We wanted
to try and maintain the hoist longer. They could not do
that or would not do it. I'm not sure what the better word
is, but that was the area that they designated as a must
load area.
The record establishes that the load was not adequately secured, leading it to shift during transit. As a result of such disruption, plaintiff and his crew had to offload part of the second load using A frames and the remainder with a pallet jack. During this process, a pallet cracked, causing the load to fall.[FN2] While Turner and the Port Authority maintain that plaintiff Valle was solely responsible for his own accident, their expert, Barry Rope, opined that City Lumber was negligent, and that City Lumber's negligence proximately caused the accident:
Based on my review of the aforementioned materials, clear
evidence exists that City Lumber's loading and securing
of the load in question violated good and accepted practice
as they placed the straps securing the load over the rub
rails of the trailer instead of in-board of the rub-rails. This
placement of the straps over the rub-rails decreases the
angle of the straps toward the load and increases the
chances of the pallet moving.
Further, stacking of pallets on either 4 by 4's or
stacked 2 by 4's makes the pallets extremely unwieldy and
considerably more likely to break down, jostle, or move in
transit, especially when items are placed on top of 2 by 4's
which do not even fit the full length of the pallet.
Based on the above, I believe that City Lumber's
packaging, loading, and securing of the load was negligent
and likely caused the load to shift during transit.
Whether the accident was due to the failure to provide adequate hoisting equipment or the failure to properly secure the load so that it did not shift makes no difference as defendants are in either case at least partially responsible (see Marrero v 2075 Holding Co. LLC (106 AD3d 408 [1st Dept 2013] [plaintiff who was injured when planks shifted and steel beams from an A-frame cart tipped over toward him entitled to partial summary judgment]).
Defendants' argument that plaintiff should have simply rejected [*6]the load and
sent it back to the City Lumber yard is absurd. Plaintiff was understandably
concerned about performing the task assigned to him by his superiors given the difficult circumstances and time constraints placed on him. Moreover, the truck, with its damaged load could not have been returned to a public thoroughfare in the condition which it was in, since, as George Marrone of City Lumber explained, it is improper to operate a truck with an overhanging load. Rather, plaintiff attempted to complete the task in the safest manner possible, and his supervisor, Donaldson vice president, Doug O'Connor, agreed that he acted properly and professionally in the circumstances.
Labor Law § 240(1) was enacted for the protection of workers who "have no choice but to work with the equipment at hand, though danger looms large" (Koenig, 298 NY 318-319). Surely, this accident was precisely the sort of accident that Labor Law § 240 was intended to prevent. Kerrigan v TDX Constr. Corp. (108 AD3d 468 [1st Dept 2013], lv denied 22 NY2d 862 [2014]), relied on by defendants, is not to the contrary. Kerrigan arose from an accident in which the plaintiff's decedent was killed when a 14,000-pound boom lift that was being lifted by a crane drifted out of position and pinned him against a wall. At the time, the decedent was a co-owner of the company that was performing the work, and he was supervising the work that led to his death. The motion court, upon a review of the evidence, attributed each possible cause of the accident to "decedent's decisions or to his supervision of Erin employees," and therefore dismissed the complaint in its entirety. On appeal, this Court affirmed, noting that plaintiff's proof failed to establish that the defendants had breached their duty under Labor Law § 240(1) to provide the plaintiff and his crew with adequate safety devices.
In the present case, by contrast, the defendants' failure to provide plaintiff
with proper safety devices was established, and under no reasonable view of the evidence could it be said that all of the causes of the accidentwere attributable to the plaintiff himself.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 17, 2020



Footnotes

Footnote 1: As noted, supra, plaintiff inserted dunnage in an attempt to stabilize the load. The pallets, on the other hand, came prepackaged with the load.

Footnote 2: See note 1, supra.