Fargiano v WFP Tower D Co., L.P. (2025 NY Slip Op 50413(U))

[*1]

Fargiano v WFP Tower D Co., L.P.

2025 NY Slip Op 50413(U)

Decided on April 2, 2025

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 2, 2025
Supreme Court, Kings County

Alphonse Fargiano, Plaintiff,

against
WFP Tower D Co., L.P. and HOLT CONSTRUCTION CORP., Defendants.
WFP TOWER D CO., L.P. and HOLT CONSTRUCTION CORP., Third-Party Plaintiffs,
against
BURGESS STEEL ERECTORS OF NEW YORK, LLC, SHELBOURNE CONSTRUCTION CORP. and ALLRAN ELECTRIC OF NY, LLC, Third-Party Defendants. 
WFP TOWER D CO., L.P. and HOLT CONSTRUCTION CORP., Second Third-Party Plaintiffs,
against
JOHN L. XETHALIS, M.D., Second Third-Party Defendant.

Index No. 512302/2015

Law Offices of Patrick J. Mullaney, Forest Hills, for plaintiff.
Litchfield Cavo LLP, New York City (Beth A. Saydak of counsel) for defendants/third-party plaintiffs/second third-party plaintiffs.
Pillinger Miller Tarallo, LLP, New York City (Dawn C. Wheeler of counsel), for third-party defendant Burgess Steel Erectors of New York, LLC.
Perry, Van Etten, Rozanski & Kutner, LLP, Melville (Michael C. Dombrowski of counsel), for third-party defendant Shelbourne Construction Corp.
Quintairos, Prieto, Wood & Boyer, P.A., New York City (Taylor M. Williams of counsel), for third-party defendant Allran Electric of NY, LLC.
Amabile & Erman, P.C., Staten Island (Charles A. Franchini of counsel), for second third-party defendant.

Aaron D. Maslow, J.

The following e-filed papers read herein: NYSCEF Doc Nos.:
Notice of Motion/Order to Show Cause/Petition/Cross Motion and Affidavits (Affirmations) Annexed 833-883, 885-910, 911-934, 935-949, 950-1020, 1021, 1116, 1142-1183
Opposing Affidavits (Affirmations) 1024, 1026-1063, 1064-1108, 1117, 1130-1132,
Affidavits/Affirmations in Reply 1109-1115, 1118-1129, 1133-1142
Upon the foregoing papers, plaintiff Alphonse Fargiano (plaintiff) moves for an order (i) pursuant to CPLR 2221, granting renewal and/or reargument of plaintiff's prior summary judgment motion on the issue of liability as to his Labor Law §§ 240 (1) and 241 (6) causes of action, which motion was denied without prejudice to renewal by order of this court, signed on January 25, 2024 and entered on January 29, 2024 (the January 25th order), and (ii) upon renewal and/or reargument, granting plaintiff's summary judgment motion on liability as to his Labor Law §§ 240 (1) and 241 (6) causes of action (motion sequence number 26).
Third-party defendant Allran Electric of NY, LLC (Subcontractor Allran Electric) moves for an order (i) pursuant to CPLR 2221, granting renewal and/or reargument of its prior motion for summary judgment to dismiss the third-party complaint, alleging claims for contribution, common law indemnification, contractual indemnification and breach of contract, which motion was denied by the January 25th order without prejudice to renewal, and (ii) upon renewal and/or reargument, granting its motion for summary judgment (motion sequence number 27).
Third-party defendant Shelbourne Construction Corp. moves for an order (i) pursuant to CPLR 2221, granting renewal and/or reargument of its prior motion for summary judgment to dismiss the third-party complaint, which motion was denied by the January 25th order without prejudice to renewal, and (ii) upon renewal and/or reargument, granting its motion for summary judgment (motion sequence number 29).
Defendants/third-party plaintiffs/second third-party plaintiffs WFP Tower D Co., L.P. and Holt Construction Corp. (collectively, defendants, third-party plaintiffs or second third-party plaintiffs) move for an order: (i) pursuant to CPLR 2221, granting renewal and/or reargument of their prior motion for summary judgment which motion was denied by the January 25th order [*2]without prejudice to renewal; (ii) upon renewal and/or reargument, granting summary judgment in their favor dismissing the complaint; and (iii) granting summary judgment in their favor on their impleader claims for contribution, indemnification, and/or breach of contract against third-party defendants and second third-party defendant (motion sequence number 30).
Third-party defendant Burgess Steel Erectors of New York, LLC (Subcontractor Burgess Steel) moves for an order (i) pursuant to CPLR 2221, granting renewal and/or reargument of its prior motion for summary judgment to dismiss the third-party complaint, which motion was denied by the January 25th order without prejudice to renewal, and (ii) upon renewal and/or reargument, granting Subcontractor Burgess Steel's motion for summary judgment (motion sequence number 28).
Plaintiff's motion (motion sequence number 26) for leave to renew is granted. Upon renewal, however, plaintiff's motion for summary judgment on the issue of liability as to his Labor Law §§ 240 (1) and 241 (6) causes of action, as such latter claim is premised on Industrial Code (12 NYCRR) §§ 23-1.30; 23-1.7 (e) (1); and 23-1.7 (e) (2), is denied.
Subcontractor Allran Electric's motion (motion sequence number 27) for leave to renew is granted and, upon renewal, movant's summary judgment motion is granted and the third-party complaint as asserted against it is dismissed.
Defendants' motion (motion sequence number 30) for leave to renew is granted and, upon renewal, the court grants those portions of defendants' summary judgment which sought dismissal of plaintiff's Labor Law §§ 240 (1) and 241 (6) claims to the extent the latter is premised upon Industrial Code (12 NYCRR) §§ 23-1.22 (a); 23-1.22 (b) (1); 23-1.22 (b) (2); 23-1.22 (b) (3); 23-1.22 (b) (4); 23-1.22 (c) (1); 23-1.22 (c) (2); 23-1.7 (b) (1); 23-1.7 (e) (1); 23-1.7 (e) (2); 23-2.1 (a) (1); 23-2.1 (a) (2); 23-2.1 (b); 23-2.4 (a); 23-2.4 (b) (1) (i); 23-2.4 (b) (1) (ii); 23-2.4 (b) (2); 23-2.4 (b) (3); 23-2.4 (c) (1); and 23-2.4 (c) (2). Those branches of defendants' motion seeking summary judgment dismissing plaintiff's claims under Labor Law § 200, common law negligence, and Labor Law § 241 (6), to the extent that such latter claim is premised on Industrial Code (12 NYCRR) § 23-1.30, are denied, as are those portions of the motion seeking summary judgment in defendants' their favor with respect to their third-party and second third-party complaints. 
Subcontractor Burgess Steel's motion (motion sequence number 28) for leave to renew is granted and, upon renewal, the motion for summary judgment dismissing the third-party complaint as asserted against it is granted.
Third-party defendant Shelbourne Construction Corp.'s (Employer Shelbourne) motion (motion sequence number 29) for leave to renew is granted and, upon renewal, the motion for summary judgment seeking dismissal of the third-party claims is granted and the third-party complaint is dismissed against it.
In light of the above, the action is severed accordingly and the caption is amended to read as follows:
ALPHONSE FARGIANO,
Plaintiff,
against
Index No.: 512302/2015
WFP TOWER D CO., L.P. and HOLT
CONSTRUCTION CORP.,
Defendants.
WFP TOWER D CO., L.P. and HOLT
CONSTRUCTION CORP.,
Third-Party Plaintiffs,
against
JOHN L. XETHALIS, M.D.,
Third-Party Defendant.
BACKGROUND
In this hybrid Labor Law, premises liability, and medical malpractice action, plaintiff, a taper,[FN1]
pleads causes of action premised on common law negligence and violations of Labor Law §§ 200, 240 (1) and 241 (6) based on injuries he allegedly sustained when he tripped and fell on a steel plate on November 28, 2014, at approximately 7:15 a.m., amidst a sprawling construction site located at 250 Vesey Street in Manhattan, New York.
At the time of the occurrence, plaintiff was employed by Employer Shelbourne, a concrete contractor. The property where the occurrence arose, a thirty-six-story commercial office skyscraper (the Building), was owned by defendant WFP Tower D Co., L.P. (Owner WFP Tower), a subsidiary of Brookfield Properties.
Owner WFP Tower retained defendant Holt Construction Corp. (General Contractor Holt) as a general contractor for the interior core buildout of the then-rough-hewn 27th through 34th floors of the Building for incoming tenants (the Project). General Contractor Holt, in turn, retained several subcontractors for the project, including Employer Shelbourne for the taping and sheetrock facets of the Project.
The Events Paving the Way to the Occurrence
Plaintiff worked for two weeks on the Project leading up to the occurrence, performing drywall finishing and taping work. On the date of the occurrence, plaintiff was conducting taping work on the 34th floor of the Building. During his deposition, plaintiff described the flooring on the 34th floor as unfinished, consisting of concrete and two feet by two feet steel plates. With respect to these steel plates, plaintiff explained that such plates were flush with the concrete and covered trenches or "raceways" running through the center of the floor along its length, where [*3]electrical and fiber optic cables could be positioned (see NYSCEF Doc No. 839, plaintiff EBT Tr. at 50, lns. 1 to 17). Plaintiff testified that the trenches, covered by these plates, were approximately two feet by two feet, six to eight inches deep (id. at 51, lns. 9 to 52, ln. 1).
Plaintiff analyzed the configuration of the flooring and the geometrical interplay between the components of such flooring as follows: "[T]he steel is covering the trench, but even with the concrete floor. No lip, no nothing" (id. at 51, lns. 6 to 8). Plaintiff characterized some of the steel plates as secured to the floor with screws, while others were lying unsecured over the trenches (id. at 58, lns. 5 to 25). Plaintiff described the 34th floor of the Building as an open floor space, being readied to accommodate offices (see NYSCEF Doc No. 839, plaintiff EBT Tr. at 49, lns. 6 to 25).
The Occurrence
On the day of the occurrence, plaintiff returned to the 34th floor of the Building to complete taping begun the preceding day. Plaintiff testified that, after mixing compound in a bucket, he was walking, carrying a bucket of compound atop his left shoulder, gazing straight ahead, while his partner, Anthony Ardilino, walked behind him pulling a Baker scaffold (id. at 74, lns. 12 to 22 and 83, lns. 1 to 84, ln. 25). Plaintiff recounted that the incident arose when he stepped with his left foot onto a metal plate that shifted or collapsed under his weight, at which juncture his foot dropped six to eight inches into the trench below, causing him to trip and fall to the ground (id. at 84, lns. 9 to 25 and 87, lns. 25 to 89, ln. 23).
Lighting in the Area of the Occurrence
Plaintiff alleges that the incident occurred in a hallway bereft of artificial lighting, featuring minimal natural light (id. at 67, lns. 8 to 69, ln. 22).
Owner WFP Tower's Nexus to the Occurrence
Ralph Rose, who managed the Building for two years before the occurrence in his capacity as senior property manager employed by Brookfield Properties, the parent company of the Building owner, Owner WFP Tower, testified during his deposition that Owner WFP Tower retained General Contractor Holt to perform post-demolition construction work on the 27th through 34th floors of the Building to bring "the floors back up to a condition where a tenant can do their furnish and fit-outs" (see NYSCEF Doc No. 1039, Rose EBT Tr. at 36, lns. 5 to 8 and 41, lns. 4 to 5).
Mr. Rose explained that the 34th floor featured an "electrical cell system" in which "[a]ll electric and telecommunications run in cells underneath the floor," which cells or "raceways" are covered with metal plates (id. at 47, ln. 7 to 48, ln. 4).
General Contractor Holt's Link to the Occurrence
Antonio Guggino, a superintendent for General Contractor Holt, supervised the construction project on which plaintiff worked, a project Mr. Guggino characterized in the following fashion as a "white box" project:
"When a tenant moves out of a floor and they built out the whole floor, a white box means you take it back to the original space before. You knock the walls down, which we didn't do. Brookfield had a  they did it on their own. They hired a demo company. He demos everything and then we get it back to the white box. We give them outer walls. We give them the core The ceilings, there's no ceilings up We just get the floor ready so if somebody wants to come look at it, they have a clear, open floor space and they can design it how they want to design."
(see NYSCEF Doc No. 1040, Guggino EBT Tr. at 23, lns. 22 to 25, at 24 lns. 1-15).
DISCUSSION
Motions for Leave to Renew or Reargue
The movants have interposed prior iterations of the summary judgment motions that are now before the court, which motions were denied by the court in its January 25th order because the earlier motion papers contravened this Part's Rules, which required that hardcopies be provided to the Part when a party's papers exceeded 75 pages (see NYSCEF Doc No. 884, Order at 2). The previous motions in question consisted of 6,090 pages in the aggregate, not including opposition and reply papers (id.).
The parties, having interposed the motions presently before the court (namely, motions sequence numbers 26, 27, 28, 29 and 30), have duly provided the court with hardcopies of their respective motions in conformity with the previously mentioned Part Rule. As a result, the court grants movants leave to renew their prior summary judgment applications and will now address the merits of same.
Plaintiff's Labor Law § 240 (1) Cause of Action
Plaintiff's Labor Law § 240 (1)[FN2]
cause of action must be dismissed as the occurrence did not involve an elevation-related hazard within the intendment of the statute. Labor Law § 240 (1) imposes a non-delegable duty upon owners and general contractors to provide safety devices to protect workers from elevation-related risks. As the New York Court of Appeals articulated this concept:
"We recently had occasion to consider the nature of the occupational hazards to which Labor Law § 240 (1) was addressed. Noting that the statute "'is to be construed as liberally as may be for the accomplishment of the purpose for which it was . . . framed' " (Koenig v Patrick Constr. Corp., 298 NY 313, 319, quoting Quigley v Thatcher, 207 NY 66, 68), we held in Rocovich v Consolidated Edison Co. (supra) that Labor Law § 240 (1) was aimed only at elevation-related hazards and that, accordingly, injuries resulting from other types of hazards are not compensable under that statute even if proximately caused by the absence of an adequate scaffold or other required safety device."
(Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 500 [1993]).
As a prerequisite to recovering under Labor Law § 240 (1), plaintiff must establish that the occurrence that led to his injuries constitutes the type of elevation-related hazard to which the statute applies. As the New York Court of Appeals has held, "[c]onsistent with this statutory purpose we have applied section 240 (1) in circumstances where there are risks related to elevation differentials" (see Rocovich v Consolidated Edison Co., 78 NY2d 509, 514 [1991]; see [*4]also Izrailev v Ficarra Furniture of Long Is., 70 NY2d 813, 815 [1987]; Zimmer v Chemung County Performing Arts, 65 NY2d 513, 524 [1985]).
The New York Court of Appeals has underscored that, to constitute a gravity-related hazard in the Labor Law § 240 (1) context, a plaintiff's injuries must be "the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential" (see Runner v New York Stock Exch., Inc., 13 NY3d 599, 603 [2009]; see also Jimenez v RC Church of Epiphany, 85 AD3d 974, 975 [2d Dept 2011]; Quinteros v P. Deblasio, Inc., 82 AD3d 861, 862 [2d Dept 2011]).
Plaintiff testified that the accident occurred when he stepped with his left foot onto a metal plate that shifted or collapsed under his weight, at which point his foot dropped to the bottom of the six-to-eight-inch trench below, leading him to trip and fall to the ground (see NYSCEF Doc No. 839, plaintiff EBT Tr. at 51, lns. 9 to 52, ln. 1; 84, lns. 9 to 25; and 87, lns. 25 to 89, ln. 23).
Plaintiff's Labor Law § 240 (1) claim, in an occurrence featuring a trip and fall involving a shallow six-to-eight-inch ground level hole, lies beyond the outer limits of the contours of the statute. The Appellate Division, Second Department has repeatedly held that Labor Law § 240 (1) is inapplicable when a plaintiff falls into a shallow ground-level hole, as such fact pattern does not implicate an elevation-related hazard. For instance, in a case in which a plaintiff who, as in the present case, was not working on a ladder or at an elevated work site, stepped into an uncovered hole on the ground level that was approximately two feet wide by three feet deep, the Appellate Division, Second Department dismissed plaintiff's Labor Law § 240 (1) claim on summary judgment, finding that "[a] hole of these dimensions does not present an elevation-related hazard to which the protective devices enumerated therein are designed to apply" (see Miller v Weeden, 7 AD3d 684, 686 [2d Dept 2004]). The Miller Court further determined that summary judgment was warranted in that, as in the present case, "the worksite was at ground level, [and, as a result,] the scaffolding, hoists, ladders, and other protective devices required under Labor Law § 240 (1) were inapplicable" (Miller, 7 AD3d at 686).
In another analogous case, plaintiff alleged that, while unloading bundles of steel at a construction site, he sustained injuries when his leg fell into a one foot by one foot hole, which was two and a half to three feet deep, in the platform at the rear of a flatbed truck (see Rice v Board of Educ. of City of NY, 302 AD2d 578, 579 [2d Dept 2003]). The Appellate Division, Second Department affirmed the Supreme Court's dismissal of plaintiff's Labor Law § 240 (1) cause of action since "a hole of this dimension does not present an elevation-related hazard to which the protective devices enumerated in Labor Law § 240 (1) are designed to apply" (Rice, 302 AD2d at 580). 
Similarly, in Vitale v Astoria Energy II, LLC (138 AD3d 981, 982 [2d Dept 2016]), plaintiff, a surveyor on a construction project, was walking across the top of a rebar grid, measuring one hundred feet by fifty feet, and five feet high, with square openings measuring approximately one foot by one foot. Plaintiff asserted that he sustained injuries when, while walking across the top of the rebar grid, he lost his balance and his left leg fell through one of the square openings of the rebar grid, up to his groin (Vitale, 138 AD3d at 982). The Appellate Division, Second Department affirmed the Supreme Court's grant of defendants' cross-motion for summary judgment dismissing the Labor Law § 240 (1) cause of action on the following basis:
"The defendants established, prima facie, that the openings of the grid, which were not of [*5]a dimension that would have permitted the plaintiff's body to completely fall through and land on the floor below, did not present an elevation-related hazard to which the protective devices enumerated in Labor Law 240 (1) are designed to apply."
(Vitale, 138 AD3d at 983; see also Avila v Plaza Constr. Corp., 73 AD3d 670, 671 [2d Dept 2010]).
In short, as plaintiff's accident stemmed from an ordinary trip and fall involving a shallow ground level hole a scant six to eight inches deep, as distinguished from a fall from an elevated height, such accident, devoid of the requisite elevation-related hazard, warrants the dismissal on summary judgment of plaintiff's Labor Law § 240 (1) claim (see Nicometi v Vineyards of Fredonia, LLC, 25 NY3d 90, 96-97 [2015] ["the extraordinary protections of the statute . . . apply only to a narrow class of dangers . . . specifically, Labor Law § 240 (1) relates only to 'special hazards' presenting 'elevation-related risk[s]' "]; Eddy v John Hummel Custom Bldrs., Inc., 147 AD3d 16, 20 [2d Dept 2016]).
Accordingly, the branch of the motion interposed by defendants for an order granting summary judgment in their favor and dismissing plaintiff's Labor Law § 240 (1) cause of action is granted (motion sequence number 30) and the branch of plaintiff's summary judgment motion on liability as to his Labor Law § 240 (1) cause of action is denied (motion sequence number 26).
Plaintiff's Labor Law § 241 (6) Cause of Action
With respect to plaintiff's Labor Law § 241 (6) cause of action, under that section, an owner, general contractor or their agent may be held vicariously liable for injuries sustained by a plaintiff where the plaintiff establishes that the accident was proximately caused by a violation of an Industrial Code section stating a specific positive command applicable to the facts of the case (see Rizzuto v L.A. Wenger Contr. Co., 91 NY2d 343, 349-350 [1998]; Honeyman v Curiosity Works, Inc., 154 AD3d 820, 821 [2d Dept 2017]).
Plaintiff relies on various Industrial Code sections in his bill of particulars to support his Labor Law § 241 (6) cause of action, which defendants move to dismiss on summary judgment (motion sequence number 30) on the ground that the Industrial Code provisions in question are inapplicable to the facts of the case, fail to set forth a specific safety standard, or were not violated.
Industrial Code (12 NYCRR) § 23-1.7 (e) (1)
Plaintiff's Labor Law § 241 (6) cause of action is predicated upon Industrial Code (12 NYCRR) § 23-1.7 (e) (1), which governs tripping hazards in passageways.[FN3]
Hewing closely to the language of section 23-1.7 (e) (1), New York courts have held that, as an essential condition to the applicability of such section, the occurrence must have arisen in a passageway (see Gancarz v Brooklyn Pier 1 Residential Owner, L.P., 190 AD3d 955, 957 [2d Dept 2021]; Lech v Castle Vil. Owners Corp., 79 AD3d 819, 820 [2d Dept 2010]; Hageman v Home Depot U.S.A., [*6]Inc., 45 AD3d 730, 731 [2d Dept 2007]).
While the term "passageway" is undefined in section 23-1.7 (e) (1), it is well-established that open areas do not fall within the purview of "passageways," and, as such, accidents taking place in open areas are not subject to the protections afforded through this section (see Castillo v Starrett City, 4 AD3d 320, 321-322 [2d Dept 2004] [defendant's summary judgment motion as to plaintiff's Labor Law § 241 (6) claim premised upon section 23-1.7 (e) (1) granted in that the accident location "was not a passageway but an open working area"]; Canning v Barneys NY, 289 AD2d 32, 34 [1st Dept 2001] [insofar as plaintiff's accident took place in an open working area, the occurrence was held not to come within the scope of section 23-1.7 (e) (1), which is restricted to incidents arising in passageways]).
An analysis of plaintiff's deposition transcript reveals that he admitted that the 34th floor of the building, where the occurrence arose, was an open floor space:
Q: The 34th floor, was it one empty space or had walls been put up for offices or something else? I just want you to describe it a little bit to me?
A: All open floor space, just core work.
(NYSCEF Doc No. 839, plaintiff EBT Tr. at 49, lns. 6 to 9). 
In light of plaintiff's testimony that the area where the occurrence took place was an open floor space, said occurrence did not arise in a passageway, as such term is interpreted by New York courts in the section 23-1.7 (e) (1) context, warranting the dismissal on summary judgment of plaintiff's Labor Law § 241 (6) cause of action to the extent that it is premised on section 23-1.7 (e) (1) (see Cody v State of New York, 82 AD3d 925, 928 [2d Dept 2011] [section 23-1.7 (e) (1) determined to be inapplicable to plaintiff construction worker's accident "because the accident site was not a passageway but an open work area"]; Isola v JWP Forest Elec. Corp., 262 AD2d 95 [1st Dept 1999] [defendant's summary judgment motion as to plaintiff iron worker's Labor Law § 241 (6) claim predicated upon section 23-1.7 (e) (1) granted since plaintiff was injured while working in an open area, as distinguished from a passageway]; Vieira v Tishman Constr. Corp., 255 AD2d 235, 236 [1st Dept 1998]).
Based on the foregoing, the branch of defendants' summary judgment motion seeking the dismissal of plaintiff's Labor Law § 241 (6) cause of action predicated on a violation of section 23-1.7 (e) (1) is granted (motion sequence number 30) and the branch of plaintiff's summary judgment motion as to his Labor Law § 241 (6) cause of action premised on a violation of that same section is denied (motion sequence number 26).
Industrial Code (12 NYCRR) § 23-1.30
Defendants challenge plaintiff's reliance on Industrial Code (12 NYCRR) § 23-1.30,[FN4]
which governs worksite illumination matters, on the basis that this section was not violated. To buttress this argument, defendants rely on their counsel's affirmation in which counsel opines [*7]that, "[a]s demonstrated by the photographs marked as exhibits at plaintiff's deposition (Ex. F to the Saydak Aff.) the lighting in the core area that plaintiff traversed in walking towards his work area was more than sufficient" (see NYSCEF Doc No. 1044, Saydak aff at 14). Defendants endeavor to use their counsel's affirmation as an evidentiary vehicle to gauge the adequacy of the illumination at the time of the occurrence is in tension with applicable precedent, pursuant to which an attorney's affirmation is devoid of evidentiary value (see Zuckerman v City of New York, 49 NY2d 557, 563 [1980] ["an affirmation by counsel is without evidentiary value and thus unavailing"]; Warrington v Ryder Truck Rental, Inc., 35 AD3d 455, 456 [2d Dept 2006]).
Having failed to adduce admissible evidence in support of their motion for summary judgment as to plaintiff's Labor Law § 241 (6) cause of action premised upon an alleged violation of section 23-1.30, defendants have failed to make a prima facie showing of entitlement to summary judgment, requiring denial of the motion as to section 23-1.30, regardless of the sufficiency of the opposing papers (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Moonilal v Roman Catholic Church of St. Mary Gate of Heaven, 225 AD3d 592, 593 [2d Dept 2024]) (motion sequence number 30).
Defendants posit in their opposition to plaintiff's summary judgment motion that he should be barred from relying upon section 23-1.30 as he failed to allege a violation of such section in his bill of particulars. The Appellate Division, Second Department has routinely granted leave to amend bills particulars to plaintiffs who failed to plead a violation of an Industrial Code section in their bills of particulars in circumstances where, as here, they make a showing of merit, the amendment raises no new factual allegations and causes no prejudice to defendant (see Gonzalez v City of New York, 227 AD3d 958, 961 [2d Dept 2024]; Verdi v SP Irving Owner, LLC, 227 AD3d 932, 935 [2d Dept 2024]; D'Elia v City of New York, 81 AD3d 682, 684-685 [2d Dept 2011]).[FN5]

That plaintiff's reliance on section 23-1.30 does not give rise to the specter of prejudice cannot be gainsaid as he testified at length during his deposition, over seven years ago, as to the "minimal light" at the time of the occurrence, thereby squarely placing defendants on notice of the illumination issue (see NYSCEF Doc No. 839, plaintiff EBT Tr. at 67, lns. 8 to 69, ln. 22).
Plaintiff claims to be entitled to summary judgment with respect to his Labor Law § 241 (6) cause of action predicated upon an alleged violation of section 23-1.30, which branch of his motion rests on plaintiff's deposition testimony as to the lighting conditions at the time of the occurrence (see NYSCEF Doc No. 882, memo. of law, ¶¶ 46-48). Specifically, plaintiff testified that the accident took place in an area devoid of artificial lighting, featuring "minimal" natural light, with the closest drop light located seventy-five feet away (see NYSCEF Doc No. 839, plaintiff EBT Tr. at 67, lns. 8 to 69, ln. 22). 
Based on plaintiff's deposition testimony as to the minimal ambient lighting at the time of the occurrence, plaintiff postulates that, "[a]s such, [said section] was violated as a matter of law" (see NYSCEF Doc No. 882, memo. of law, ¶ 48). Plaintiff's conclusory argument that section 23-1.30 was "violated as a matter of law" based on his testimony as to the lighting [*8]conditions is unavailing. Plaintiff's amorphous testimony as to the poor lighting conditions, albeit sufficient to raise an issue of fact as to whether section 23-1.30 was violated, is insufficient to demonstrate the absence of any triable issue of fact as to whether such section was violated and, in particular, the exacting requirement embedded in section 23-1.30 that "in no case shall such illumination be less than 10 foot candles in any area where persons are required to work nor less than five foot candles in any passageway. . . ." (see Pullman v Silverman, 28 NY3d 1060, 1062-1063 [2016] [movant's summary judgment motion denied as the affidavit submitted in support of the motion was conclusory and insufficient to demonstrate the absence of triable issues of fact]; Kadanoff v Whitlow, 189 AD3d 1569, 1570 [2d Dept 2020]; Stiso v Berlin, 176 AD3d 888, 890-891 [2d Dept 2019]).
In sum, having opted to submit neither expert evidence, nor evidence from individuals with personal knowledge, as to whether the illumination at the time of the occurrence failed to pass muster under the rigorous five and ten-foot candle thresholds delineated in section 23-1.30, plaintiff cannot wrest the lighting issue from the trier of fact. As such, the branch of plaintiff's summary judgment motion as to his Labor Law § 241 (6) cause of action predicated on a violation of section 23-1.30 must be denied (motion sequence number 26). 
Industrial Code (12 NYCRR) § 23-1.7 (e) (2)
Plaintiff's Labor Law § 241 (6) cause of action is also based on Industrial Code (12 NYCRR) § 23-1.7 (e) (2), which proscribes the presence of dirt and debris in working areas.[FN6]
 Plaintiff alleged during his deposition that his trip and fall was occasioned by the presence of a shifting or collapsing steel plate, which testimony falls outside the narrowly circumscribed boundaries of section 23-1.7 (e) (2).
Specifically, plaintiff testified that, while carrying a bucket of compound on his shoulder, he stepped with his left foot onto a metal plate that shifted or collapsed under his weight, at which point his foot dropped into the trench below, causing him to trip and fall to the ground (see NYSCEF Doc No. 839, plaintiff EBT Tr. at 84, lns. 9 to 25 and 87, lns. 25 to 89, ln. 23).
Plaintiff's concession that his trip and fall took place due to a shifting or collapsing steel plate leads to the conclusion that the accident did not arise owing to the "dirt," "debris" and "scattered tools and materials" barred under section 23-1.7 (e) (2), warranting the dismissal on summary judgment of plaintiff's Labor Law § 241 (6) cause of action to the extent that it is premised on section 23-1.7 (e) (2) (see Verel v Ferguson Elec. Constr. Co., Inc, 41 AD3d 1154, 1157 [4th Dept 2007] [in a case involving a plaintiff who tripped and fell over electrical conduits protruding from a concrete floor on a construction site, defendants' summary judgment motion as to the Labor Law § 241 (6) claim predicated upon section 23-1.7 (e) (2) granted since the electrical conduits do not constitute "dirt and debris" or "scattered tools and materials"]; Alvia v Teman Elec. Contr., 287 AD2d 421, 423 [2d Dept 2001] [in action brought by a construction worker who tripped on a piece of plywood, resulting in his leg dropping into a twelve by sixteen inch hole in the floor, section 23-1.7 (e) (2) was held to be inapplicable as the plywood on which plaintiff tripped did not constitute "debris" or "scattered materials"]).
Based on the foregoing, the branch of defendants' summary judgment motion seeking the dismissal of plaintiff's Labor Law § 241 (6) cause of action predicated on a violation of section 23-1.7 (e) (2) is granted (motion sequence number 30) and the branch of plaintiff's summary judgment motion as to his Labor Law § 241 (6) cause of action premised on a violation of that same section is denied (motion sequence number 26).
Industrial Code Provisions Abandoned by Plaintiff
Defendants have demonstrated, prima facie, that Industrial Code (12 NYCRR) §§ 23-1.7 (b) (1); 23-1.22 (a); 23-1.22 (b) (1); 23-1.22 (b) (2); 23-1.22 (b) (3); 23-1.22 (b) (4); 23-1.22 (c) (1); 23-1.22 (c) (2); 23-2.1 (a) (1); 23-2.1 (a) (2); 23-2.1 (b); 23-2.4 (a); 23-2.4 (b) (1) (i); 23-2.4 (b) (1) (ii); 23-2.4 (b) (2); 23-2.4 (b) (3); 23-2.4 (c) (1); and 23-2.4 (c) (2), which Industrial Code sections were identified by plaintiff in his bill of particulars, do not state specific standards, are inapplicable to the facts herein or were not violated. Insofar as plaintiff has abandoned reliance on those sections by failing to address them in his opposition papers, defendants are entitled to dismissal of the Labor Law § 241 (6) cause of action to the extent that it is premised on those sections (see Debennedetto v Chetrit, 190 AD3d 933, 936 [2d Dept 2021]; Pita v Roosevelt Union Free Sch. Dist., 156 AD3d 833, 835 [2d Dept 2017]) (motion sequence number 30).
Plaintiff's Labor Law § 200 and Common Law Negligence Claims
Labor Law § 200 is a codification of the common law duty imposed on general contractors and owners to provide construction site workers with a safe place to work (see Comes v New York State Elec. & Gas Corp., 82 NY2d 876, 877 [1993]; Cun-En Lin v Holy Family Monuments, 18 AD3d 800, 801 [2d Dept 2005]). Claims asserted under Labor Law § 200 and common law negligence theories fall under two rubrics: (i) those in which a worker alleges to have sustained injuries through the means and methods of the work performed; and (ii) those in which a worker alleges to have been injured due to a dangerous or defective condition within the worksite (see Carranza v JCL Homes, Inc., 210 AD3d 858, 860 [1st Dept 2022]; Ortega v Puccia, 57 AD3d 54, 61 [2d Dept 2008]).
Since plaintiff's accident arose when he allegedly stepped onto an unsecured metal plate that shifted or collapsed under his weight, leading his foot to descend into the trench below, causing him to trip and fall to the ground (see NYSCEF Doc No. 839, plaintiff EBT Tr. at 84, lns. 9 to 25 and 87, lns. 25 to 89, ln. 23), this case falls within the purview of the dangerous or defective premises condition category (see Aragona v State of New York, 74 AD3d 1260, 1261 [2d Dept 2010] [case involving a dock builder who sustained injuries when he tripped on a padeye,[FN7]
which was welded to the deck of a work barge, as he was carrying materials, analyzed under the auspices of the dangerous or defective condition within the worksite category for purposes of plaintiff's Labor Law § 200 and common law negligence claims]; Verel, 41 AD3d at 1156 [plaintiff construction worker's trip and fall due to electrical conduits emanating from the floor on a construction project analyzed under the dangerous or defective premises condition category]). 
The fulcrum on which defendants' motion for summary judgment to dismiss plaintiff's [*9]Labor Law § 200 and common law negligence claims turns is the notion that defendants did not supervise plaintiff's work. As defendants assert, the "deposition testimony of the parties uniformly demonstrates that, at no point, were defendants involved in the supervision, direction and control of plaintiff's sheetrock taping work on the 34th Floor" (see NYSCEF Doc No. 1019, memo. of law at 14). Defendants' focus on the supervision issue is in vain as they sidestep the substance of the core constructive notice issue. Indeed, when a plaintiff's injuries stem from a dangerous or defective condition on the worksite, the owner may be liable under Labor Law § 200 and common law negligence if it had actual or constructive notice of the dangerous condition, irrespective of whether it supervised plaintiff's work (see Wynne v State of New York, 53 AD3d 656, 657 [2d Dept 2008]; Kerins v Vassar Coll., 15 AD3d 623, 626 [2d Dept 2005]; Blanco v Oliveri, 304 AD2d 599 [2d Dept 2003]).
As a corollary, since defendants did not make a prima facie showing in their summary judgment motion that they lacked constructive notice of the defective condition of the allegedly unsecured plate at issue in the present case, they failed to make a prima facie showing of entitlement to summary judgment as to the Labor Law § 200 and common law negligence causes of action, warranting the denial of this branch of their motion (see Campbell v New York City Tr. Auth., 109 AD3d 455, 456 [2d Dept 2013]; Smith v Cari, LLC, 50 AD3d 879, 880 [2d Dept 2008]).
Absent from defendants' motion is any evidence as to when the area where the occurrence took place was last inspected relative to the time plaintiff's accident arose, requiring the denial of defendants' summary judgment motion as to the Labor Law § 200 and common law negligence causes of action. Indeed, to meet its prima facie burden on the constructive notice issue, it is incumbent on a property owner to offer evidence as to when the area of the occurrence was last inspected in relation to plaintiff's fall (see Levine v Amverserve Assn., Inc., 92 AD3d 728, 729 [2d Dept 2012]; Rolon v Arden 29, LLC, 216 AD3d 825, 826 [2d Dept 2012]). In the case before the court, defendants failed to satisfy their prima facie burden on summary judgment to proffer evidence that they lacked constructive notice of the allegedly dangerous and defective metal plate as they provided neither witness testimony, nor documentary evidence, establishing when the area of the occurrence was last inspected relative to the time of plaintiff's fall (see Campbell v New York City Tr. Auth., 109 AD3d 455, 456 [2d Dept 2013]; Tsekhanovskaya v Starrett City, Inc., 90 AD3d 909, 910 [2d Dept 2011]).
Based on the above, the branch of defendants' motion for summary judgment seeking to dismiss plaintiff's Labor Law § 200 and common law negligence causes of action is denied without regard to the sufficiency of plaintiff's opposition papers (motion sequence number 30).
Indemnification, Contribution, and Breach of Contract Issues as to Subcontractor Allran Electric
Third-party plaintiffs impleaded Subcontractor Allran Electric, asserting claims for breach of contract, contractual and common law indemnification as well as contribution arising from the injuries sustained by plaintiff on the Project on November 28, 2014. Subcontractor Allran Electric has moved for summary judgment to dismiss the third-party complaint, which motion revolves inexorably around a single axis, namely, that it had no involvement with, or contract with respect to, the Project until May 18, 2015, 171 days after the occurrence, thus vitiating the third-party action (see NYSCEF Doc No. 886, Williams aff at 18).
A review of the parties' deposition transcripts reveals that no witness has testified that [*10]Subcontractor Allran Electric was present on the Project before, or at the time of, the occurrence. To the contrary, Ralph Rose, senior property manager at Brookfield Properties - who testified as a witness for third-party plaintiffs - admitted that he had never seen Subcontractor Allran Electric working at the Building (see NYSCEF Doc No. 840, Rose EBT Tr. at 44, lns. 10 to 12). Similarly, plaintiff conceded during his deposition that he had never heard of Subcontractor Allran Electric and did not see any electricians working in the area of the occurrence during the approximate time frame of the accident (see NYSCEF Doc No. 1036, plaintiff EBT Tr. at 29, lns. 9 to 14).
In further support of Subcontractor Allran Electric's position that it was not present in the Building, and was under no contractual duty to be present, until May 18, 2015, 171 days post-occurrence, the subcontract between General Contractor Holt and Subcontractor Allran Electric is dated May 18, 2015 and contains no language directing or implying that Subcontractor Allran Electric's duties thereunder were to be retroactively applied (see NYSCEF Doc No. 891, contract at 1).
In the absence of any admissible evidence to rebut Subcontractor Allran Electric's prima facie showing that it had no involvement, by way of contract or presence, on the Project until May 18, 2015, 171 days after plaintiff's accident, movant is entitled to summary judgment dismissing the third-party plaintiff's claims for breach of contract to procure insurance, common law and contractual indemnity, and contribution (see Cando v Ajay Gen. Contr. Co. Inc., 200 AD3d 750, 752 [2d Dept 2021] [a party moving for summary judgment to dismiss a common law indemnification claim can meet its prima facie burden by establishing that the accident was not caused by its negligence]; Cacanoski v 35 Cedar Place Assoc., LLC, 147 AD3d 810, 812-813 [2d Dept 2017] [court held that an indemnity contract will not be found to have retroactive effect unless expressly provided]; Mikelatos v Theofilaktidis, 105 AD3d 822, 824 [2d Dept 2013] [cross-motion to dismiss contractual indemnification claim on summary judgment granted as cross-movant established prima facie that the accident was not caused through its negligence, which showing was not refuted]; Jehle v Adams Hotel Assoc., 264 AD2d 354, 355 [1st Dept 1999] [to maintain a claim for common law contribution, a third-party plaintiff must show that third-party defendant contributed to plaintiff's accident by breaching a duty to plaintiff or third-party plaintiff]; Franklin v Carpinello Oil Co., 84 AD2d 613 [3d Dept 1981] [court underscored that "[w]ithout a contract there can be no breach of the agreement"]).
In light of the foregoing, Subcontractor Allran Electric's summary judgement motion for an order dismissing the third-party complaint is granted and the third-party complaint is dismissed as against Subcontractor Allran Electric (motion sequence number 27). In turn, the branch of third-party plaintiffs' summary judgment motion on their claims against Subcontractor Allran Electric in the third-party complaint is denied (motion sequence number 30).
Indemnification, Contribution, and Breach of Contract Issues as to Employer Shelbourne
In their third-party complaint, third-party plaintiffs have asserted claims against Employer Shelbourne for indemnification, contribution, and breach of contract, which claims stem from the injuries sustained by plaintiff on the Project attendant to the occurrence. Employer Shelbourne has moved for summary judgment to dismiss the third-party complaint.
As plaintiff was employed by Employer Shelbourne at the time of the occurrence, Workers Compensation Law (WCL) § 11 looms large in this context. Pursuant to WCL § 11:
"An employer shall not be liable for contribution or indemnity to any third person based [*11]upon liability for injuries sustained by an employee acting within the scope of his or her employment for such employer unless such third person proves through competent medical evidence that such employee has sustained a 'grave injury'. . . ."
Plaintiff has claimed injuries to various areas of his body in his bill of particulars and supplemental bills of particulars, including injuries to his left arm and/or hand, which required him to undergo an arthroscopic surgery. However, Employer Shelbourne has made a prima facie showing via, inter alia, video surveillance, that plaintiff's injuries fall short of the catastrophic injuries that come within the restricted scope of a "grave injury" for purposes of WCL § 11.[FN8]
Faced with Employer Shelbourne's prima facie showing, third-party plaintiffs echo plaintiff's claim in his bill of particulars that he sustained a "grave injury," failing to refute the evidence adduced by Employer Shelbourne as to the "grave injury" issue (see NYSCEF Doc No. 1062, memo of law at 13).
In light of Employer Shelbourne's unrebutted prima facie showing that plaintiff has not sustained a "grave injury," as that term is defined in WCL § 11, dismissal on summary judgment of third-party plaintiffs' claims against Employer Shelbourne for indemnification and contribution is warranted (see Blackburn v Wysong & Miles Co., 11 AD3d 421, 422 [2d Dept 2004] [in suit brought by injured plaintiff against machine manufacturer, court dismissed on summary judgment manufacturer's third-party action seeking indemnification and contribution from plaintiff's employer as "[u]nder the 1996 amendments to Workers Compensation Law § 11, an employer may only be held liable for contribution or indemnification if the employee has sustained a grave injury"]; Ibarra v Equipment Control, 268 AD2d 13, 17-18 [2d Dept 2000] [indemnification and contribution claims asserted against employer of injured factory worker dismissed on summary judgment pursuant to WCL § 11 as worker did not sustain a grave injury]).
Turning to third-party plaintiffs' breach of contract claim against Employer Shelbourne for failure to procure insurance, the subcontractor agreement between General Contractor Holt and Employer Shelbourne requires the latter to name third-party plaintiffs as additional insureds on a comprehensive general liability policy featuring $1,000,000 of coverage and an excess/umbrella policy with a $5,000,000 coverage limit. Employer Shelbourne has proffered prima facie evidence that it complied with the parties' insurance procurement agreement by securing: (i) a primary policy issued by SNIC, with a $2,000,000 coverage limit, naming third-party plaintiffs as additional insureds; and (ii) a commercial excess liability policy issued by National Union, with a $10,000,000 coverage limit providing coverage to third-party plaintiffs as additional insureds.
In their opposition, third-party plaintiffs failed to rebut through admissible evidence the prima facie showing made by Employer Shelbourne as to its adherence with the parties' insurance procurement contract (see NYSCEF Doc No. 1062, memo of law at 13), mandating [*12]the dismissal on summary judgment of third-party plaintiffs' breach of contract claim for failure to procure insurance (see Gluck v Mapfre Ins. Co. of NY, 221 AD3d 662, 664 [2d Dept 2023]; Byrne v Sidhu, 215 AD3d 622 [2d Dept 2023]; Myers v Ferrara, 56 AD3d 78, 86 [2d Dept 2008]).
Based on the above, Employer Shelbourne's summary judgment motion for an order dismissing the third-party complaint is granted and the third-party complaint is dismissed as against Employer Shelbourne (motion sequence number 29). Consequently, the branch of third-party plaintiffs' summary judgment motion on their claims asserted against Employer Shelbourne in the third-party complaint is denied (motion sequence number 30).
Indemnification, Contribution, and Breach of Contract Issues as to Subcontractor Burgess Steel
In their third-party complaint, third-party plaintiffs interposed claims against Subcontractor Burgess Steel for contractual and common law indemnification, as well as contribution, stemming from the injuries sustained by plaintiff on the Project in connection with the occurrence. Subcontractor Burgess Steel, an entity specializing in commercial renovation, has moved for summary judgment to dismiss the third-party complaint, which motion is rooted in a straightforward proposition, namely, Subcontractor Burgess Steel's lack of linkage to the occurrence.
The third-party plaintiffs' contractual indemnification claim is premised upon a subcontract dated November 4, 2014 between General Contractor Holt and Subcontractor Burgess Steel, which provides, as a condition precedent to triggering an indemnification duty on the part of Subcontractor Burgess Steel, that the claim sought to be subject to indemnification "arise[] out of or result[] from the performance" of Subcontractor Burgess Steel's work, provided that the claim was "caused or alleged to be caused in whole or in part by any negligent act or omission" by Subcontractor Burgess Steel.[FN9]

In support of its summary judgment motion, Subcontractor Burgess Steel has adduced admissible evidence in the form of the deposition transcript of its construction supervisor on the Project, Steven Foglio, who testified that: (i) while Subcontractor Burgess Steel was retained by General Contractor Holt to work in the Building in conjunction with the Project in November 2014, its work consisted of extending the Building's elevator to the penthouse level, a task unrelated to the occurrence (see NYSCEF Doc No. 1042, Burgess EBT Tr. at 12, lns. 19 to 13, ln. 19 and 40, lns 4-9); (ii) it neither manufactured nor installed steel plates for the flooring of the Building (id. at 23, lns. 1 to 24 and 29, lns. 1 to 4); and (iii) it was not present on the 34th floor, where the occurrence arose, as its duties pertained to the elevator extension project (id. at 44, lns. 5 to 15).
Based on the foregoing, Subcontractor Burgess Steel has made a prima facie showing [*13]that plaintiff's alleged trip and fall due to an unsecured steel plate did not arise from its work and that the occurrence was not the fruit of any negligence on its part, as would be required to impose a duty of indemnification under the parties' subcontract. In opposition, third-party plaintiffs have failed to present any non-conjectural evidence that Subcontractor Burgess Steel installed, repaired or manufactured steel plates on the 34th floor of the Building in the area of the occurrence prior to the accident, whether through invoices, contracts, affidavits, deposition transcripts or e-mails.
In these circumstances, third-party plaintiffs' contractual indemnification claim must be dismissed on summary judgment (see Pereira v Hunt/Bovis Lend Lease Alliance II, 193 AD3d 1085, 1090 [2d Dept 2021] [subcontractor's summary judgment motion to dismiss owner and construction manager's contractual indemnification claim granted given the lack of evidence that the accident arose from subcontractor's work, in light of provision in parties' indemnification agreement that subcontractor was under a duty to indemnify for claims arising out of its work]; Mikelatos v Theofilaktidis, 105 AD3d 822, 824 [2d Dept 2013]).
Much like the contractual indemnification claim, third-party plaintiffs' common law indemnification and contribution claims against Subcontractor Burgess Steel must be dismissed on summary judgment in light of the unrefuted prima facie showing made by Subcontractor Burgess Steel that plaintiff's injury did not arise through its negligence. Indeed, in circumstances where, as here, it cannot be shown that a subcontractor's negligence caused an accident, common law indemnification and contribution claims are subject to dismissal on summary judgment (see Castillo v Port Auth. of NY and N.J., 159 AD3d 792, 795-796 [2d Dept 2018] [common law indemnification and contribution claims dismissed since subcontractors were not actively at fault in bringing about the injury]; Guerra v St. Catherine of Sienna, 79 AD3d 808, 809 [2d Dept 2010] [third-party defendant maintenance contractor granted summary judgment on the common law indemnification and contribution causes of action since it made an unrefuted prima facie showing that it bore no responsibility for the instrumentality that caused plaintiff's fall]).
Based on the foregoing, Subcontractor Burgess Steel's summary judgment motion for an order dismissing the third-party complaint is granted and the third-party complaint is dismissed as against Subcontractor Burgess Steel (motion sequence number 28). In turn, the branch of third-party plaintiffs' summary judgment motion on their claims asserted against Subcontractor Burgess Steel in the third-party complaint is denied (motion sequence number 30).
Second Third-Party Plaintiffs' Claims Against John Xethalis, M.D. Arising from Alleged Medical Malpractice
In the second third-party complaint, second third-party plaintiffs assert claims for contribution and common law indemnification against John L. Xethalis, M.D. (Dr. Xethalis) predicated on the notion that the injuries sustained by plaintiff in connection with the occurrence were exacerbated by the intra-operative medical care rendered by Dr. Xethalis during the left shoulder surgery undergone by plaintiff on April 27, 2016, which care is alleged to have deviated from accepted standards of practice, proximately causing plaintiff's injuries.
As shall appear, second third-party plaintiffs' motion for summary judgment against Dr. Xethalis has spawned a proverbial battle of the experts, pitting dueling medical experts against each other.
In support of their motion for summary judgment, second third-party plaintiffs rely on an affirmation generated by Eial Faierman, M.D. (Dr. Faierman), an orthopedic surgery expert, who [*14]asserts that, in the wake of the April 27, 2016 surgery, plaintiff was diagnosed with a severe post-operative left brachial plexopathy. Dr. Faierman avers that the left brachial plexopathy caused plaintiff severe functional loss and atrophy of his left upper extremity, which plaintiff denies having experienced pre-surgery.
Dr. Faierman opines that the left brachial plexus injury, along with its attendant post-operative complications, were proximately caused by either improper or excessive traction or stretching, and/or improper positioning of the left upper extremity or shoulder, by Dr. Xethalis or the assisting resident, who did not use an arm rest device during the surgery, thereby allegedly departing from accepted standards of care.
In opposition to summary judgment, Dr. Xethalis's orthopedic surgery medical expert, John Reilly, M.D. (Dr. Reilly) offers a sharply divergent account as to the propriety of Dr. Xethalis's medical care. Dr. Reilly asserts that Dr. Xethalis did not depart from good and accepted medical practice during the surgery as he appropriately placed plaintiff in the so-called "beach chair" position during the procedure.
Further, Dr. Reilly alleges that Dr. Xethalis adhered to accepted standards of care by having a resident maintain positioning of the patient's extremities during the surgery and that an arm rest, or other like holding device, would have proved superfluous. Moreover, Dr. Reilly contends that one may not reasonably conclude that a traction injury arose from the surgery, as other potential causes of plaintiff's brachial plexopathy exist. In short, Dr. Reilly concludes that Dr. Xethalis did not proximately cause the injuries sustained by plaintiff.
Given the conflicting opinions of the parties' experts as to Dr. Xethalis's alleged departure from accepted standards of medical practice, and causal nexus to plaintiff's brachial plexopathy, issues of material fact have emerged, barring the drastic summary judgment remedy sought by second third-party plaintiffs against Dr. Xethalis, which issues cannot be wrested from the trier of fact (see B.G. v Cabbad, 172 AD3d 686, 688 [2d Dept 2019] [summary judgment denied in medical malpractice case since the case "presented a credibility battle between the parties' experts, and issues of credibility are properly left to a jury for its resolution"]; Wexelbaum v Jean, 80 AD3d 756, 758 [2d Dept 2011]; Barbuto v Winthrop Univ. Hosp., 305 AD2d 623, 624 [2d Dept 2003]).
Based on the foregoing, the branch of second third-party plaintiffs' summary judgment motion on their claims asserted against Dr. Xethalis in the second third-party complaint is denied in light of the existence of material issues of fact (motion sequence number 30).
Any arguments not expressly addressed herein were considered and deemed to be without merit. The action is severed and the Clerk is directed to enter judgment accordingly.
This constitutes the decision, order and judgment of the court.

Footnotes

Footnote 1:A taper is a drywall finisher who prepares drywall for painting by taping and finishing joints and concealing flaws to ensure that surfaces are primed and ready for painting by, among other things, spreading coats of sealing compound over imperfections by means of trowels (Dictionary of Occupational Titles, http://www.occupationalinfo.org/84/842664010.html [last accessed March 7, 2025]).

Footnote 2:Labor Law § 240 (1) provides, in pertinent part, that "[a]ll contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

Footnote 3:Pursuant to Industrial Code (12 NYCRR) § 23-1.7 (e) (1), "[a]ll passageways shall be kept free from accumulations of dirt and debris and from any other obstructions or conditions which could cause tripping. Sharp projections which could cut or puncture any person shall be removed or covered."

Footnote 4:Industrial Code (12 NYCRR) § 23-1.30 provides that "[i]llumination sufficient for safe working conditions shall be provided wherever persons are required to work or pass in construction, demolition and excavation operations, but in no case shall such illumination be less than 10 foot candles in any area where persons are required to work nor less than five foot candles in any passageway, stairway, landing or similar area where persons are required to pass."

Footnote 5:Defendants eschew citation to any Appellate Division, Second Department cases in support of their position that plaintiff should be barred from relying on section 23-1.30 owing to his failure to set forth such section in his bill of particulars (see NYSCEF Doc No. 1044, Saydak Aff. at 13-14).

Footnote 6:Industrial Code (12 NYCRR) § 23-1.7 (e) (2) provides that "[t]he parts of floors, platforms and similar areas where persons work or pass shall be kept free from accumulations of dirt and debris and from scattered tools and materials and from sharp projections insofar as may be consistent with the work being performed."

Footnote 7:A padeye is a ring fixed to the structure of a ship as a hold for small lines and tackles (Collins Dictionary, http://www.collinsdictionary.com/us/dictionary/english/padeye.html [last accessed March 7, 2025].

Footnote 8:A "grave injury" is defined in WCL § 11 as "death, permanent and total loss of use or amputation of an arm, leg, hand or foot, loss of multiple fingers, loss of multiple toes, paraplegia or quadriplegia, total and permanent blindness, total and permanent deafness, loss of nose, loss of ear, permanent and severe facial disfigurement, loss of an index finger or an acquired injury to the brain caused by an external physical force resulting in permanent total disability."

Footnote 9:The subcontract provides that the "Subcontractor shall indemnify and hold harmless the Owner, the Architect, the General Contractor . . . from and against all claims, damages, loss and expenses, including . . . attorneys' fees, arising out of or resulting from the performance of the Subcontractor's work provided that: a) any such claim damage, loss or expense is attributable to bodily injury . . . to the extent caused or alleged to be caused in whole or in part by any negligent act or omission of the Subcontractor" (see NYSCEF Doc No. 1066, Subcontract, ¶ 12.1).